## Weaver v. Iselin, Appellant.

*Amendment—Parties—Practice, Supreme Court.*

The record of an action, brought by a father to recover damages for the death of his minor son, may be amended in the Supreme Court by the addition of the name of the mother as a plaintiff.

*Negligence—Infant—Master and servant—Contributory negligence.*

In an action against a mine owner by a father to recover damages for the death of his son, fourteen years of age, it is proper to submit the question of plaintiff's contributory negligence to the jury, where the evidence is conflicting as to whether the father permitted the boy to work in the mine without any consideration as to where he was to work, and without using any precautions to protect him from danger.

In such case the question of defendant's negligence is for the jury where there is evidence that the boy was employed to drive a mule, and had imposed upon him the additional task of opening a door to see whether the track ahead was clear, and there was evidence that a regular attendant should have been placed at the door, and that the absence of such attendant was the cause of the accident.

Argued April 19, 1894. Appeal, No. 114, July T., 1893, by defendant, Adrian Iselin, from judgment of C. P. Clearfield Co., Feb. T., 1893, No. 206, on verdict for plaintiff, George C. Weaver. Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM and FELL, JJ. Affirmed.

Trespass for death of plaintiff's son. Before KREBS, P. J.

The facts appear by the following charge :

" John Donahue was a driver in the mine, and on the date of the accident was proceeding with a train of four empty cars coming from the mouth of the drift of the mine entering into the mine; and, according to the description here, which is not

contradicted, he was passing up the right main heading to a point where they switch off from the right main heading to cross over on to the left main heading. Between the right main heading and the left main heading there is a door for the purpose of cutting off the air, and which in the testimony here has been spoken of as the 'shoo-fly.' In order to pass through into the left main heading, it was the duty of some one to open that door and ascertain whether or not the loaded trains that came out of the second left heading from the main left heading (which trains seemed to have the right of way) were coming down, or whether that passage was clear so as to allow the empties to pass up without any interference with the loaded trains coming down; and if, after going to the point where it could be seen and ascertained whether or not a loaded train was coming down, it was found that the way was clear, a signal was given to the driver of the empties to pass up.

" It would seem from the testimony of Donahue that on that particular day the boy Weaver passed through the door and went up above the latches or point of switching, and subsequently gave a signal to him so that he passed through with his empties; and just at the point opposite the second left heading a loaded train of two cars came down and collided with the empties and caught the boy and crushed him so that within an hour he died. . . .

" It is claimed here on the part of the plaintiff that this accident was caused by the negligence of the defendant in removing this boy from his employment as leader of the mule at the electrical machine to the position or place of a driver or patcher under and with Donahue, the driver, and in not having a trapper or some one to open and close the door at the 'shoo-fly,' whose duty it was to do that and signal the trains and do nothing else. . . .

" If under the evidence in this case you find that this mine in its operation required, for the reasonable safety and care of the employees in there, that a regular trapper should be stationed at this door, whose duty it was to perform the duties of trapper and nothing else, and there was no trapper placed there, and that increased the hazard and risk and danger of the helpers and leaders and drivers, and the accident happened from the want of such trapper, then you might find that there was

negligence. But, in addition to that, it will be necessary for you to find that, even if there was negligence on the part of the defendant, no act of negligence on the part of the boy contributed to bring about the accident. . . .

" In addition to that, gentlemen of the jury, it is claimed here on the part of the plaintiff that the father did not know of the removal of this boy from the place where he was first put in the employment of the defendant at the mining machine, and that therefore he is not responsible or answerable for anything more than he (the plaintiff) has done. If you find that, at the time that this boy was employed to lead the mule at the mining machine, Mr. Weaver saw William McLeavy, who under the evidence was there as mining boss with the added powers and duties of hiring and discharging men, and the conversation occurred such as is detailed here by Weaver, then the father had done all that the law required at his hands, unless he subsequently knew that this boy had been taken away from that point and put at another point in the mine, which was less safe than the one in which he was first employed. . . .

" The question was asked Mr. Weaver : ' State what conversation you had with him ? (that is, referring to Mr. McLeavy.) A. I told him I had come over to see in regard to the boy, and I says to him that I didn't care about letting the boy away from me on account of I got him hurt once before by letting him away from me to work. And then he says, says he, " The job I want him for there is no danger," that he wanted him to lead a mule to shift the iron man, and then he said, " you don't need to worry about that, I will see that he is not in any danger." Q. Had you any knowledge that the boy had been changed to the work of a patcher ? A. No, sir.' "

McLeavy was called and testified that plaintiff did not see him till after the accident.

Defendant's points were, among others, as follows :

" 8. That the undisputed evidence shows that the decedent was placed and employed as a trapper or doorkeeper, and that as such he had no right to be, or duty which called him to be, at the place where he was injured ; and that he was informed by the mine boss and the assistant mine boss that his only duties were only those of a trapper or doorkeeper, and that he had nothing to do with the cars, nor to help the drivers ; there-

fore, the verdict of the jury should be for the defendant. *Answer :* The bone of contention in this case has been, as I have stated it, as to where this boy was placed. This point would require us to say that the evidence is undisputed that he was employed as a trapper or a doorkeeper. We cannot say that, in our view of the case, and we submit that question to the jury; and, therefore, decline to affirm this point in the language in which it was put." [3]

"9. That the undisputed evidence shows that William Mc-Leavy, who was a competent mine boss, was employed and had full power to place and designate the employment of the hands employed in the mine at such place and work as was necessary for the successful working of the mine; therefore, if any negligence on the part of any one but the decedent conduced to his death, it is not chargeable to the defendant, and the verdict of the jury should be for the defendant. *Answer :* In answer to that point, we say that under the act of 1885, and its supplements, regulating the employment of mine bosses, that it was no part of the duties of a mine boss to employ or discharge men; that his duties had reference to the ventilating apparatus and the air ways and the traveling ways, pumps, tracks and drainage, and the proper amount of props and gates and things that relate to the operation of the mine as a mine. If William Mc-Leavy had the authority here to hire and employ men and was the representative of Mr. Iselin in the management of this mine, and this accident happened because of the negligence in the proper management of the mine, and there was no contributory negligence by the father or the boy, then the defendant is liable." [1]

"10. Under the pleadings and evidence in the case, the verdict of the jury should be for the defendant. *Answer:* As I understand that point, it is predicated, partly, at least, on the first section of the act of April 26, 1885, which is in this language: 'The persons entitled to recover damages for any injury causing death shall be the husband, widow, children and parents of the deceased, and no other relative, and the sum recovered shall come to them in the proportion they would take of his or her personal estate in case of an intestate.' Under our understanding of this act, we cannot affirm this point so far as it relates to this question. We believe the father has a right to

maintain this action; and, under the evidence in the case, we think this is a case in which the question of negligence and of contributory negligence is for the jury. We therefore decline to affirm this point." [2]

Verdict and judgment for plaintiff for $3,000.

*Errors assigned* were (1–3) instructions, quoting them.

*G. A. Jenks, Means & Clark* and *Frank Fielding* with him, for appellant, cited: Coal Co. v. Jones, 86 Pa. 433; Lineoski v. Coal Co., 157 Pa. 164; Act of June 30, 1885, P. L. 239; Waddel v. Simoson, 112 Pa. 567; Coal Co. v. Carroll, 89 Pa. 374; Reese v. Biddle, 112 Pa. 72; Coke Co. v. Roby, 115 Pa. 364; Clough v. Hoffman, 132 Pa. 627; Pawling v. Hoskins, 132 Pa. 617; Frankenfield v. Gruver, 7 Pa. 448; Mechling's Ap., 2 Grant, 157; Gillan's Ex'rs v. Dixon, 65 Pa. 395; R. R. v. Adams, 55 Pa. 499.

*Thomas H. Murray, Allison O. Smith* with him, for appellee, cited: McKee v. Bidwell, 74 Pa. 228; R. R. v. Werner, 89 Pa. 64; Neslie v. Ry., 113 Pa. 300; Rummell, Admr., v. Dilworth, 111 Pa. 343; Mullan v. Steamship Co., 78 Pa. 25; Lewis v. Seifert, 116 Pa. 647; Ross v. Walker, 139 Pa. 50; Canal Co. v. Carroll, 89 Pa. 382; Com. v. Dillon, 81 Pa. 41; Seipel v. R. R., 129 Pa. 425; Thornton v. Britton, 144 Pa. 126; Thompson v. Mattern, 115 Pa. 501; Baker v. Boro., 151 Pa. 234; Malone v. R. R., 152 Pa. 390; Schall v. Cole, 107 Pa. 7.

PER CURIAM, April 30, 1894:

We have no doubt as to the right of the plaintiffs to amend, in the manner proposed, even at this stage of the case. It appearing that the name of Susanna Weaver, wife of plaintiff George Weaver, was omitted from the record by mistake, and counsel having moved to amend by adding her name as one of the plaintiffs, it is ordered that the record be amended accordingly.

We are satisfied from an examination of the record that this case depended on questions of fact which were clearly for the exclusive determination of the jury. The controlling questions were, on the one hand, the alleged negligence of the defendant,

and on the other, the alleged contributory negligence of the deceased. The testimony, bearing on each of these and subordinate questions, was fairly submitted to the jury in a clear and adequate charge, which appears to be entirely free from any error of which defendant has any reason to complain. The only logical inference that can be drawn from the verdict for plaintiffs, is that the jury found that the defendant's negligence was the proximate cause of the boy's death, and that the latter was not guilty of any negligence which contributed to the fatal result. That finding was not unwarranted by the testimony; and hence, in the absence of any erroneous rulings or instructions by the learned trial judge, the verdict and judgment thereon must be regarded as conclusive. Neither of the specifications is sustained.

Judgment affirmed.