The Northern Central Railway Company, Appellant, *v.*
   Warren F. Walworth, Daniel F. Lafean, C. C. Frick,
   H. C. Niles, H. H. Weber, Charles I. Nes, C. H. Demp-
   wolf, M. H. Houseman, George K. McGaw, The York
   Southern Railroad Company, John Henry Miller, Wil-
   liam Gilmore, and The Security Title and Trust Com-
   pany.

| | |
|---|---|
| 193 | 207 |
| Case 2 | |
| 21 SC | 2 86 |
| 193 | 207 |
| Case 2 | |
| 205 | 5 82 |
| 193 | 207 |
| Case 2 | |
| 213 | 218 |
| 193 | 207 |
| Case 2 | |
| 220 | 423 |

*Contracts—Mutuality—Remedies—Equity—Sale of stocks and bonds—
Prior contract.*

   A subsequent sale and delivery of stocks and bonds to others, in disre-
gard of a prior contract, is no defense to a bill for a specific performance,
when the transferees are made parties, and the bill avers that they had
knowledge of the prior contract.

   The principle that contracts must be mutual, must bind both parties or
neither, does not mean that in every case each party must have the same
remedy for a breach by the other, but that the contract is enforceable on

both sides in some manner; not necessarily enforceable on both sides by specific performance.

*Contracts—Uncertainty.*

A contract for the sale of stocks, whereby the seller undertakes that all debts of the company shall be paid on the day of the transfer, and the buyer is to retain a sufficiency of the price to assure him that the company is free from debt, is not void for uncertainty in not stating the debts, where the amount to be paid is fixed and definite, since, if default is made in the payment, the amounts to be deducted can be shown.

While the general rule in Pennsylvania is that a bill in equity will not lie for the specific performance of contracts for the sale of chattels, the rule does not apply where the articles sold are of such a nature that they cannot be purchased in the market.

A contract for the sale and purchase of almost all of the bonds and stock of a railroad company for a specified price, with a further covenant that the vendor should pay certain interest and floating debt of the company and use his best endeavors to secure for the vendee the remaining bonds and stock of the company at the lowest price practicable, does not lack mutuality, and it may be specifically enforced in equity.

*Railroads—Purchase of stock of one company by another—Public policy —Act of April* 23, 1861.

A contract for the purchase by a railroad company of the stock of another company is not against public policy, where the two roads are not parallel or competing lines, as the Act of April 23, 1861, P. L. 410, authorizes such purchases.

Argued May 16, 1899. Appeal, No. 53, Jan. T., 1899, by plaintiff, from decree of C. P. York Co., Oct. T., 1898, No. 2, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for specific performance.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court sustaining demurrer to the bill.

*Nevin M. Wanner*, with him *Horace Keesey*, for appellant.— Specific performance will be decreed by a court of equity if the means of ascertaining what seems uncertain in the contract are at hand: Felty v. Calhoun, 139 Pa. 378; Herdic's App., 58 Pa. 211; Fry on Specific Performance, sec. 207.

The parties may enter into a contract in different ways, e. g., one by signature and the other by a verbal promise, which

would give different forms of action to the different parties for a breach of it. But that would not impeach the mutuality or binding effect of the contract upon both parties. So one party may have his remedy by an action at law, and the other by a decree of specific performance in equity : Grove v. Hodges, 55 Pa. 516 ; Jennings v. McComb, 112 Pa. 522. The election of the proposed vendee to treat the agreement as binding fully satisfies the rule as to mutuality : Corson v. Mulvany, 49 Pa. 98.

The court's jurisdiction is not ousted by a supposed remedy at law unless such remedy is full, adequate and complete. It may be sustained on the very ground that it is the most convenient remedy, for equity seeks to prevent unnecessary litigation by disposing in one proceeding of all questions which may arise affecting many persons : Johnston v. Price, 172 Pa. 427 ; Appeal of Brush Electric Co., 114 Pa. 574 ; Ressler v. Witmer, 1 Pearson, 174 ; Bonebrake v. Summers, 8 Pa. Superior Ct. 55 ; Goodwin Co.'s App., 117 Pa. 534 ; Nestel v. Knickerbocker Life Ins. Co., 12 Phila. 477 ; McGowin v. Remington, 12 Pa. 56 ; Palmer v. Graham, 1 Pars. 476 ; Beasley v. Allyn, 12 W. N. C. 91.

Under the facts and circumstances of the case at bar, specific performance of a contract for the transfer of railway stocks and bonds will be decreed : Phila. & Reading R. R. Co. v. Stichter, 11 W. N. C. 330 ; Dietrich v. Tyson, 4 Phila. 352 ; Cunningham's App., 108 Pa. 558 ; Lewis on Stocks and Bonds, 144 ; Sank v. Union Steamship Co., 5 Phila. 499.

The right of one railroad to lease, make traffic contracts with, or purchase the stock, bonds, etc., of other roads under the act of April 23, 1861, and its supplements, has never been doubted since the passage of that act, and the constitution of 1874 does not affect it, except to prohibit the consolidation and leasing of parallel and competing lines : Pitts. & Connellsville R. R. Co. v. Bedford & Bridgeport R. R. Co., 81* Pa. 113 ; Hampe v. Traction Co., 165 Pa. 468.

There is nothing whatever in the bill to indicate that the York Southern Railroad Company is a parallel or competing line with the Northern Central Railway Company, and such is not the fact. The contract, therefore, is not void under the constitutional prohibition.

Neither can the court hold that it is against public policy, for

the policy of the law must be sought for in the course of legislation in this commonwealth, and in the adjudication of its highest courts : Van Steuben v. Cent. R. R. Co., 178 Pa. 368; Carpenter's App., 170 Pa. 203; Reinhold v. Reinhold, 7 Pa. Dist. Rep. 565.

When a court of equity has once obtained jurisdiction of the cause of action for one purpose it may retain it for the other purposes of equitable relief, though not prayed for in the bill, if disclosed by the evidence : Ahl's App., 129 Pa. 50 ; McGowin v. Remington, 12 Pa. 56; Slemmer's App., 58 Pa. 155; Masson's App., 70 Pa. 29 ; Shafer's App., 110 Pa. 386; Allison's App., 77 Pa. 227; Thomas v. Boswell, 14 Phila. 197 ; Wilkinson v. Starr, 14 W. N. C. 359 ; Evans v. Tibbins, 2 Grant, 451.

*Henry C. Niles*, of *Niles & Neff*, and *J. S. Black*, for appellees.—Specific performance of a contract involving the payment of a price will not be decreed until the price shall be ascertained. If the plaintiff had agreed to pay Walworth the sum of $160,000 less the floating indebtedness, etc., of the York Southern, to be ascertained by the parties at some future time, the contract would be conditional and incapable of enforcement until the indebtedness of the railroad had been ascertained by the parties : 2 Beach on Modern Equity Jurisprudence, sec. 580 ; Woodruff v. Woodruff, 44 N. J. Eq. 349.

When a contract is incapable of being enforced against one party it is equally incapable of being enforced against the other : Ballou v. March, 133 Pa. 64 ; Marble Co. v. Ripley, 10 Wallace, 359; Bodine v. Glading, 21 Pa. 50; Meason v. Kaine, 63 Pa. 340.

The general rule is that a court of equity will not decree the specific performance of a contract for the sale of stocks or other chattels : Foll's App., 91 Pa. 434; Stayton v. Riddle, 114 Pa. 470 ; Weaver v. Shenk, 154 Pa. 206.

The allegation of irreparable injury without setting out the specific facts which are said to cause it, is insufficient: 2 Beach on Modern Equity Jurisprudence, sec. 641 ; Holdrege v. Gwynne, 18 N. J. Eq. 26.

OPINION BY MR. JUSTICE GREEN, October 6, 1899 :

By the very explicit and plainly expressed terms of the writ-

ten contract in question in this case, the defendant Warren F. Walworth agreed to sell and deliver to the plaintiff, on or before the 25th day of June, 1898, certificates for 10,000 shares of the capital stock of the York Southern Railroad Company, and $142,000 of the five per cent bonds of the same company due in 1944. In consideration of the said sale and transfer the plaintiff agreed to pay to the vendor the sum of $160,000. There is not the least element of doubt or uncertainty as to what this contract is and means. It means just what it says, and what it says is so plainly and clearly expressed that a description of its meaning would be merely a repetition of its words. The vendor further agreed that the railroad company should be free of debt, except its mortgage debt of $399,950, and its car trust notes, not exceeding $4,000, and he agreed also that he would pay all the interest due on the mortgage debt and car trust notes, and the principal and interest of all the floating debt of the company up to the time of delivery, June 25, 1898. To make sure of the payment of these items it was further agreed that the vendee, the plaintiff, might retain out of the purchase money so much as was sufficient to make the payment. The foregoing are the whole of the terms of the sale, and it is scarcely necessary to repeat that they are absolutely free of any question as to their meaning. The vendor agreed that he would use his best endeavors to secure for the vendee the remaining 2,000 shares of the stock of the railroad company, and the remaining $8,000 of its mortgage bonds, at the lowest price practicable, and that he would submit the accounts, books and records of the company to the examination of a representative of the vendee, but these stipulations were merely ancillary and constituted no part of the actual contract of sale. The bill alleges and the demurrer necessarily admits that the vendee, at the request of the vendor, extended the time of performance from the 25th day of June to the 31st day of July, 1898. And the bill further avers, and the demurrer does not deny and necessarily admits, that the vendee was ready and willing to comply with its part of the contract in all respects, both on the 25th day of June and on the 31st day of July, but that the vendor failed and neglected to comply with his part of the contract on either of those dates. The bill further alleges, and the demurrer does not deny and necessarily admits, that on the 27th

day of August, 1898, the vendor absolutely refused to perform
his part of the said contract of sale, and declared the same ter-
minated.   The bill further avers that after the execution of the
contract of sale the defendant, Walworth, in fraud of plaintiff's
rights, sold and delivered the said stock and bonds to other of
the defendants, naming them, and that these other defendants,
when they bought and received the said stock and bonds, had
knowledge and were advised of the previous contract made by
said Walworth with the plaintiff, and colluded with Walworth
for the delivery of the stock and bonds to themselves in fraud
of the plaintiff's rights.   Some amendments to the bill were
allowed, but as they are not material to the controversy in its
present state they are not now considered.

The demurrer filed by the defendants to the bill contains a
number of averments, many of which are of so trivial a char-
acter as not to require consideration.   The learned court below
refused a special injunction and subsequently sustained the de-
murrer and dismissed the bill.   The reasons for this action are
expressed in the opinion filed, and they are chiefly to the effect
that the contract is too uncertain and indefinite in its terms ;
that the contract lacks mutuality, and is "loaded down with
conditions contradictory and incapable of performance ; " that
a bill for specific performance is an appeal to the conscience of
a chancellor, who will not order its performance if it is hard or
unconscionable ; that the bill does not show irreparable injury ;
that the securities have been transferred to the parties, and that
specific performance will not be decreed in Pennsylvania of con-
tracts for the sale of stocks and chattels.   We find ourselves
quite unable to agree with any of these conclusions.   We have
already considered the averment of uncertainty and indefinite-
ness in the terms of the contract.   We have endeavored to show
that there is nothing indefinite or uncertain about it, but that
its terms are plainly and clearly expressed, and we cannot con-
ceive of any reason why they cannot be specifically performed.
The subsequent sale and delivery of the securities to other
parties in disregard of the earlier contract with the plaintiff
is not of the least consequence as a defense, most especially
when the bill avers that those parties had knowledge of the
prior contract with the plaintiff, and they are made parties to
the bill and are asked to be enjoined.   We do not discover any

want of mutuality in the contract. If the vendor had performed his part of the contract and the vendee had refused to take the securities upon tender of them being made, we know of no reason why specific performance could not be decreed against the plaintiff. We are not referred to any authority holding the contrary of such a doctrine. Certainly an action for damages would lie, in which the whole contract value of the securities could be recovered, and that is a sufficient reply to the allegation of "want of mutuality." In Jennings v. McComb, 112 Pa. 518, we said: "The principle that contracts must be mutual, must bind both parties or neither, does not mean that in every case each party must have the same remedy for a breach by the other. Covenants may lie against one, where only assumpsit can be maintained against the other: Grove v. Hodges, 55 Pa. 504." In the note on page 940 of 22 Am. & Eng. Ency. of Law (1st ed.), it is said, "The mutuality required is that which is necessary for creating a contract enforceable on both sides in some manner, but not necessarily enforceable on both sides by specific performance."

The contention that the contract is uncertain because the amount of the interest on the mortgage bonds and the car trust notes is not stated, and the amount of the floating debt of the company is not given, and therefore the contract does not disclose how much money is to be paid for the securities, is of no force. The amount to be paid is fixed and definite, $160,000. There is no amount to be deducted, unless the vendor defaults in his agreement to pay the interest on the bonds and note and the principal and interest of the floating debt, and such default is not to be presupposed. But if it occurs the vendor can show what the amounts to be deducted are, and thus these amounts can be rendered certain, and that is certain which can be made certain. The only other contention of any importance is the one that bills in equity will not lie in Pennsylvania for the specific performance of contracts for the sale of chattels. While this is true as a general rule, it is not true where the articles sold are of such a nature that they cannot be purchased in the market. This contract is for the sale and purchase of almost the whole of the bonds and stock of this particular company.. These securities cannot be had nor obtained except under and by force of this particular

contract. They cannot be bought in the general market, because they do not exist. Outside of this contract there are but 2,000 shares of stock and $8,000 of bonds; hence it is not possible for the plaintiff to obtain the bonds and stocks which the defendant Walworth agreed to sell him, except by the specific performance of this contract. This consideration constitutes a well-established exception to the general rule which denies specific performance to executory contracts for the sale of chattels. This whole subject was discussed in the opinion of this Court delivered by CLARK, J., in the case of Goodwin Co.'s Appeal, 117 Pa. 514, and the exception to the rule as above stated was clearly recognized and enforced. On page 534 it is said in the opinion: " The same general principles govern in contracts for the sale of stocks of this character as in the sale of other personal property; if the breach can be fully compensated equity will not interfere; but when, notwithstanding the payment of the money value of the stock, the plaintiff will still lose a substantial benefit, and thereby remain uncompensated, specific performance may be decreed: Waterman on Spec. Perf. sec. 19. . . . The doctrine has in some cases been carried to this extent that if a contract to convey stock is clear and definite, and the uncertain value of the stock renders it difficult to do justice by an award of damages, specific performance will be decreed."

The case of Foll's Appeal, 91 Pa. 434, cited for the appellee, has no application. The decision was founded upon the special and highly exceptional facts stated in the opinion, which do not appear in this case. Moreover there were but fifteen shares involved in that controversy, and there were several hundred more shares in the hands of other persons which were susceptible of purchase. It nowhere appears on the record of this case that there is anything contrary to public policy in specifically executing this contract. The sufficiency of that reason for the decision of Foll's Appeal may well be questioned. To the writer it is not at all sufficient, but the other reason, that there was other stock open to purchase, was of controlling force. In the present case, however, the contention founded upon a supposed public policy adverse to the acquisition of control by any one interest is altogether inapplicable. The public policy of a state is certainly indicated by its legislation.

In Carpenter's Estate, 170 Pa. 203, we said : " How can there
be a public policy leading to one conclusion when there is a
positive statute directing a precisely opposite conclusion. . . .
There can be no public policy which contravenes the positive
language of a statute." In Van Steuben v. Central R. R. Co.,
178 Pa. 367, we said: " The public policy of a state is to be
deduced from the general course of legislation and the settled
adjudications of its highest courts."

By our Acts of April 23, 1861, P. L. 410, and its supplements
of March 17, 1869, P. L. 11, February 17, 1870, P. L. 31, and
May 16, 1861, P. L. 702, railroad companies were fully author-
ized to lease, make traffic contracts with or purchase the stock,
bonds, etc., of other railroad companies, and these laws and
the numerous decisions under them most clearly favor the
existence of a public policy sanctioning all transactions of that
character. In the case of R. R. Co. v. R. R. Co., 171 Pa. 284,
it was said by our Brother DEAN in the opinion : " The right
of one road to lease, make traffic contracts with, or consolidate
with connecting roads not parallel or competing has not for
thirty-four years been doubted that we know of; the act of
April 23, 1861, expressly confers such right, and the constitution
does not affect it except to prohibit the consolidation and leasing
of parallel and competing lines. The rights of connecting roads
under that act have been recognized many times since the
adoption of the constitution of 1874 ; and that contracts for
through business, both freight and passenger, between connect-
ing railroads and shippers, are not only not ultra vires, but on
the contrary, have for their basis sound business principles ;
and special contracts may be made with a special class of ship-
pers to secure business. . . . It is not seldom those who have
reaped benefits from a contract such as this seek to escape its
obligations by taking refuge in that assumed turpitude which,
on grounds of public policy, avoids the contract; but here, and
it is a gratification to us to say it, the parties to this contract
violated no law, restrained not others from engaging in busi-
ness, did nothing of evil example or detrimental to public mor-
als ; therefore there is no public policy which, in the absence
of express legislative enactment, makes void this contract."

The Act of April 23, 1861, P. L. 410, contains the following
provision: " That it shall and may be lawful for any railroad

company created by and existing under the laws of this commonwealth, from time to time, to purchase and hold the stock and bonds, or either, of any other railroad company or companies chartered by or of which the road or roads is or are authorized to extend into this commonwealth."

In the face of such legislation it is idle to talk of a purchase of the bonds and stocks of one railroad company by another being contrary to the policy of the law.

It is almost unnecessary to add that there is nothing on this record showing or tending to show that the York Southern Railroad is a parallel or competing line with the Northern Central Railway.

With reference to the contention that there is an adequate remedy at law, and that the bill does not show an irreparable injury, it is enough to say that under the case disclosed by the bill the plaintiff has no remedy at law, and that the plaintiff's injury is necessarily irreparable in every equitable sense, if the plaintiff does not acquire the bonds and stock which they purchased and aver their readiness and willingness to pay for. It was these bonds and stock which they bought, and which they had a perfect legal right to buy. If they cannot have them their injury is necessarily irreparable, because they lose the very subject-matter of their contract. A money consideration, even if it could be obtained, is no substitute. The assignments of error are all sustained.

The decree of the court below is reversed and the demurrer is overruled. The defendant is ordered to answer the bill under penalty of a decree pro confesso, and the record is remitted for further proceedings, the costs to be paid by the defendants.