Minkin (et al., Appellant) *v.* Minkin.

Argued September 29, 1938; reargued May 23, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*I. E. Binstock*, with him *Benjamin L. Steinberg*, for appellant.

*John D. McIntyre*, with him *Clyde E. Donaldson*, for appellee.

OPINION BY MR. JUSTICE LINN, July 3, 1939:

The appellant, an eight year old minor, suing by his next friend, brought this action against his mother to recover for the death of his father, alleged to have resulted from her negligent driving of an automobile. Judgment for the defendant was entered on a statutory demurrer, the learned court below being of opinion (1) that public policy prohibited suit by the minor against his mother and, (2) that the statutes (April 15, 1851, P. L. 669, 12 PS section 1601, and April 26, 1855, P. L. 309, as amended, 12 PS section 1602) gave no right of action to children when one parent survives. A majority of the members of the court agree that the judgment must be reversed.

The Act of 1851 provides: "That whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow the personal representatives, may maintain an action for and recover damages for the death thus occasioned" (sec. 19). The Act of 1855, as amended, provides: "That the persons entitled to

recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; and that such husband, widow, children, or parents of the deceased shall be entitled to recover, whether he, she, or they be citizens or residents of the Commonwealth of Pennsylvania, or citizens or residents of any other State or place . . . and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth." Section 2 of the original act provides: "That the declaration shall state who are the parties entitled in such action; the action shall be brought within one year after the death, and not thereafter."

The legislation clearly states that the minor shall share in the compensation payable by one whose negligence caused his parent's death.

The purpose of the legislation was to provide for the recovery of compensation for loss for which the common law furnished no redress. In creating the new right the legislature designated the members of the family who should share in the compensation recoverable: "and the sum recovered shall go to them [widow and children] in the proportion they would take [the father's] personal estate in case of intestacy, and that without liability to creditors. . . ." On the face of the statutes, then, the plaintiff, a minor child of the deceased father, is entitled to the share specified. The legislature made no exceptions, such as defendant would imply, to the effect that the child shall be deprived of the benefit of the statute when the surviving parent is the tort-feasor, or if the suit conflicts with a rule at times theretofore prohibiting suits disruptive of the family relation.[1] The words of the conjectured excep-

---

[1] This court has not directly passed on this point, though, in this Commonwealth, children and parents appear against each other constantly in criminal prosecutions, in desertion and non-

tion are not found in the statute, and as it is complete without them, we are not authorized to add them.

The legislation was a declaration of public policy on the subject and necessarily displaced any policy to the contrary, if, in fact, it existed. "The public policy of a state is certainly indicated by its legislation. In *Carpenter's Estate,* 170 Pa. 203, [32 A. 637] we said: 'How can there be a public policy leading to one conclusion when there is a positive statute directing a precisely opposite conclusion. . . . There can be no public policy which contravenes the positive language of a statute.'" *Northern Central Ry. Co. v. Walworth,* 193 Pa. 207, 214 et seq., 44 A. 253.

Defendant's suggestion of a procedural difficulty that she may not sue herself is not substantial.[2] She is placed, by the legislature, in nominal control of the action but, when there are children, she conducts the suit in a representative capacity, just as in some states[3] an administrator is required to bring the suit as the representative of the parties for whose benefit the legislation allows recovery. One who is entitled to sue in a representative capacity necessarily subjects his acts to the scrutiny of the court in order that good faith

---

support proceedings, as well as in proceedings in defence of property owned by them respectively. Reported cases show that in some jurisdictions suits between unemancipated minors and parents are permitted while in others they are not. Most of the cases are collected by Peaslee, C. J., in *Dunlap v. Dunlap,* 84 N. H. 352, 150 A. 905 (1930), in holding that such actions lie. To the same effect, see the discussion of the Lords Justices of the Court of Session of Scotland in *Young v. Rankin* [1934], S. C. 499, and the Justices of the Supreme Court of Canada in *Fidelity, etc., Co. v. Marchand* [1924], 4 D. L. R. 157. On the general subject also see McCurdy, Torts between Persons in Domestic Relation, 43 Harv. L. Rev. 1030; and recent cases referred to in a Note, 52 Harv. L. Rev. 1015.

[2] This subject, for the future, is covered by Rules of Civil Procedure, numbers 2201 to 2207, effective September 4, 1939.

[3] Compare *Dickinson, Admr., v. Jones,* 309 Pa. 256, 163 A. 516; *Singer v. Messina,* 312 Pa. 129, 167 A. 583.

may be assured and, if necessary to accomplish the purposes of the trust, the court will control the fiduciary. In *McFadden v. May*, 325 Pa. 145, 153, 189 A. 483, the Chief Justice said: "The statute, which enumerated the persons entitled to sue, appointed them to represent the family. The plaintiff does not sue for himself alone but as a representative or trustee for those beneficially entitled. If the husband in the present case were to sue he would do so as a mere nominal plaintiff acting only for the benefit of others." If the widow settles with the tort-feasor, the court requires her to distribute among those entitled: *Allison v. Powers*, 179 Pa. 531, 36 A. 333; *Shambach v. Middlecreek Elec. Co.*, 232 Pa. 641, 645, 81 A. 802. It is the representative character in which the statute makes her plaintiff, that renders inapplicable the suggested procedural objection.

The statement of claim shows a liability for damages suffered by the minor for the death of his father resulting from the wrongful act of the defendant; such a suit is authorized by the statute and must be brought by the representative designated in it. While the record shows a suit by the minor acting by his next friend, it may be treated as amended in this court[4] by altering the title to read "Kate M. Minkin, statutory plaintiff, suing on behalf of Jerome M. Minkin, a minor, vs.

---

[4] In *Frey v. United Traction Co. of Pittsburgh*, 320 Pa. 196, 199, 181 A. 775, a third party beneficiary case, we held that the record should be considered, as if amended in this court, as brought by a legal plaintiff, who had not been named, to the use of the real plaintiff, to conform to the law and the fact. In *Weaver v. Iselin*, 161 Pa. 386, 29 A. 49, the mother's name was added as co-plaintiff with the father in this court. In *Kerr v. Penna. R. R. Co.*, 169 Pa. 95, 32 A. 96, a married woman was permitted to sue alone, though her husband was still living; see page 99. In *Bracken v. Penna. R. R. Co.*, 222 Pa. 410, 71 A. 926, the mother's name as co-plaintiff was added after the case had been appealed and reversed. See also *Waltz v. Pa. R. R. Co.*, 216 Pa. 165, 65 A. 401; *McArdle v. Pittsburgh Rwy. Co.*, 41 Pa. Superior Ct. 162, 165.

Kate M. Minkin." She cannot be heard to complain that she is required to exercise a right given to her child by law; as plaintiff, she must act as a fiduciary. By amending the title no new cause of action against defendant is introduced and no new party is brought in. *McFadden v. May,* 325 Pa. 145, 189 A. 483, involved bringing in a new party; it appeared that the plaintiff sued to recover for the death of her daughter. The daughter had left surviving a husband alleged to have deserted her, but no children. Defendant challenged the right of the plaintiff, as decedent's mother, to bring suit in view of the fact that decedent's husband survived. The court below held that plaintiff had no right of action and entered judgment for defendant. On plaintiff's appeal, we reversed, granting leave to amend without prejudice, etc. In the course of the opinion, the Chief Justice said: "It would seem just and proper that, when a prior class has no beneficial interest in the proceeds of the recovery, but retains only the nominal right to sue and does not exercise such right, those who are beneficially entitled should not be barred thereby from prosecuting their claim. A proper procedure would be to allow them to use, as plaintiff, the name of the person entitled to bring the suit. The bringing of suit by a person having the real interest in the name of a legal plaintiff who no longer has such an interest is not unfamiliar practice in Pennsylvania, nor has a defendant ever been allowed to question the relations between the legal and the real plaintiff." See also *Ronca v. British & Foreign Insurance Co.,* 314 Pa. 449, 451, 172 A. 475, and *Leland v. Firemen's Insurance Co.,* 127 Pa. Superior Ct. 533, at pages 539 to 544, 193 A. 475.

If it be shown, as the statement of claim avers, that the cause of the father's death was the defendant-mother's negligence, she, in her own right, can take nothing in the suit; but the fact that she has disabled herself from sharing, will not deprive the other bene-

ficiary—the minor—of the benefit of his statutory right to recover.[5]

Recovery is claimed on behalf of the minor child alone. The suit was originally brought on behalf of two children; the death of one of them has been suggested of record, but its death will not enlarge the share of the surviving child under the intestate law.[6] The jury should be instructed that the measure of damages is the value of the decedent's life to the parties specified in the statute, which will be ascertained as in such cases;[7] that if they find for the plaintiff they shall determine the value of the decedent's life to his surviving widow and child and, after having done that, shall award the plaintiff, for the minor, one-third of that amount, being the proportion of decedent's personal estate passing to the minor in case of intestacy; the verdict will include nothing for the widow.

The judgment is reversed and the record is remitted for further proceedings.

CONCURRING OPINION BY MR. JUSTICE STERN:

The opinion of the court is to the effect that even if ordinarily it be against public policy for a minor

[5] Compare *Gaydos v. Domabyl,* 301 Pa. 523, 532, 152 A. 549; see Wigmore, Contributory Negligence of Beneficiary, 2 Ill. Law Rev. 487 (1908); Hockenbury, Contributory Negligence of a Statutory Plaintiff, 39 Dickinson Law Rev. 174 (1935); *Wolf v. Lake Erie Co.,* 55 Ohio St. 517, 45 N. E. 708; *Cleveland, etc., Ry. v. Workman,* 66 Ohio St. 509, 64 N. E. 582; *Southern Pac. Co. v. Day,* 38 F. (2d) 958 (C. C. A. 9th); Notes, 23 A. L. R. 648 and 670; 30 A. L. R. 500; Restatement, Torts, 492, 493.

[6] Section 8 of the Intestate Act of 1917, P. L. 429, 20 PS section 61, provides: "In default of issue, as aforesaid, the real and personal estate of such intestate not hereinbefore given to the surviving spouse, if any there be, shall go to and be vested in the father and mother of such intestate; or, if either the father or mother be dead at the time of the death of the intestate, the parent surviving shall take such real and personal estate."

[7] *Pilipovich v. Pittsburgh Coal Co.,* 314 Pa. 585, 172 A. 136; *Gaydos v. Domabyl,* 301 Pa. 523, 530, 152 A. 549; *Kaczorowski v. Kalkosinski,* 321 Pa. 438, 442, 184 A. 663.

child to sue its parent in tort, that principle has no place in suits brought under the Acts of April 15, 1851, P. L. 669, and April 26, 1855, P. L. 309, since they do not exclude from the generality of their provisions cases in which a parent is the defendant. I cannot subscribe to this view. The well known history of these statutes is convincing proof of the fact that they did not have in contemplation the situation here involved or any intention to affect the law regarding it. If, at common law, it is against public policy for a minor child to sue its parent in tort, I do not think the Acts of 1851 and 1855 changed that rule in the cases to which they apply.

I am of opinion, however, that it is not against public policy for a minor to sue his parent, whatever the form of the action, where the suit is to vindicate *property* rights and not to recover damages for acts of violence or negligence affecting the person. For example, if a parent were to embezzle his child's money, or physically destroy his property, there is no reason why suit should not be permitted even though the action be in trespass. An action for damages resulting from a parent's death is to recover for a *property* loss—the deprivation of support that would have been received from the deceased parent had he lived.

I therefore concur in the decision.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

I am unable to agree with the conclusion of the majority that an unemancipated minor can maintain a tort action against his parent. As I understand the majority opinion, the conclusion is reached that such a suit can be maintained, because, in their view, the public policy which forbade such a suit has been set aside by the death statutes of 1851 and 1855. It has been the opinion of bench and bar since the passage of these acts, that is to say for almost a century, that such an action does not lie, because public policy, jealous of the maintenance of good will in the family relation,

denied it. It seems to me that, in concluding otherwise, my brethren who differ in view from me must be of the belief that no public policy can now stand against the statutes, but there are, at least there have been, instances in which we have maintained until quite recently the rule that, notwithstanding these statutes, public policy forbids the pursuit of death actions against certain classes of tort-feasors, as in the cases of public charities, schools, religious institutions and municipal corporations carrying on a governmental function, so that it is not for all torts resulting in death that actions can be maintained: *Devers v. Scranton City,* 308 Pa. 13, 161 A. 540; *Carlo v. Scranton School Dist.,* 319 Pa. 417, 179 A. 561. The public policy forbidding actions for negligence by unemancipated minor children against parents has quite recently (March 1, 1938) been fully discussed by the Supreme Judicial Court of Massachusetts in *Luster v. Luster,* — Mass. —, 13 N. E. (2nd) 438, which, calling attention to many cases, held that public policy forbids such suits.*

It would seem that there is some inconsistency in the majority view that the death statutes set aside the public policy. It recognizes this effect so far as the maintenance of the action is concerned, but denies the effect of the statute which would give damages to the mother by its express terms. The ruling is that she may not recover in damages from herself, although the statute expressly confers upon her a right of recovery. The opinion in this respect, therefore, upholds the pub-

---

* To the many cases cited by the Massachusetts court, we add: *Briggs v. City of Phila.,* 112 Pa. Superior Ct. 50, 170 A. 871; *Martens v. Martens,* 11 N. J. M. 705, 167 A. 227; *Damiano v. Damiano,* 6 N. J. M. 849, 143 A. 3; *Mannion v. Mannion,* 3 N. J. M. 68, 129 A. 431; *Krohngold v. Krohngold,* 181 N. E. 910 (Ohio App.); *Lund v. Ulson,* 183 Minn. 515, 237 N. W. 188; *Bulloch v. Bulloch,* 456 Ga. A. 1, 163 S. E. 708; *Lusk v. Lusk,* 113 W. Va. 17, 166 S. E. 538; Restatement, Torts, Vol. 1, p. 344, Topic 2, "Privilege to Discipline Children." The cases cited in the Massachusetts decision are from twenty States.

lic policy that a person may not recover damages for his own wrong.

In my view, the death statute was passed, not to overturn, but in subservience to the common law public policy. Statutes in derogation of the common law must be strictly construed and only such modifications will be recognized as the statute clearly and definitely prescribes: *Heaney v. Mauch Chunk Boro.*, 322 Pa. 487, 185 A. 732; *Wilson v. Wilson,* 126 Pa. Superior Ct. 423, 191 A. 666; *Petit v. Fretz's Executor,* 33 Pa. 118.

I would not make the departure from what I believe to be a most sound public policy leading to the maintenance of the family relation. I cannot seal with my approval that which I believe will have a tendency to disrupt it until the legislature, which declares the public policy of the State, shall overturn that which has existed time out of mind by giving to unemancipated minors the right to sue their parents for their alleged negligence.

Mr. Justice Drew and Mr. Justice Barnes concur in this dissent.