## Mikula v. Harrisburg Polyclinic Hospital

*Joseph F. Flanagan* of *Flanagan, Doran, Biscontini & Shaffer,* for plaintiff.

*James K. Thomas* of *Metzger, Hafer, Keefer, Thomas & Wood; Wilhelm E. Shissler* of *Nauman, Smith, Shissler & Hall* and *James F. Carl* of *Metzger, Wickersham, Knauss & Erb,* for defendants.

## OPINION

DOWLING, J., March 21, 1972.—This is a malpractice action charging negligence against a hospital and three physicians in connection with the death of plaintiff's decedent.

The action was instituted by a summons on January 22, 1971, and some months later, with the apparent prodding of several rules to plead, a complaint was filed June 3, 1971. It recites that on or about November 4, 1968, plaintiff's decedent was admitted to defendant hospital and until his discharge on January 24, 1969, was under the care of defendant doctors. The pleading alleges causes of action under the wrongful death and survival acts. Defendants responded to the complaint with a flood of preliminary objections in the form of motions for a more specific complaint, motions to strike and demurrers alleging a variety of deficiencies. While the objections are relatively numerous, the various bases for dissatisfaction are somewhat fewer and fall into three broad classifications.

### MOTIONS FOR A MORE SPECIFIC COMPLAINT AND A MOTION TO STRIKE BECAUSE OF INSUFFICIENT ALLEGATIONS AS TO NEGLIGENCE, TIME AND PARTICULAR DEFENDANTS

The fundamental pleading requirement at issue is found in Pennsylvania Rule of Civil Procedure 1019(a), which states:

"The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."

The question is whether the complaint is sufficiently clear to defendants to prepare their defense. Various decisions have established certain principles of pleading which are pertinent in a solution to this problem. In Leonard v. Dolaway, 76 D. & C. 452 (1951), it was held that plaintiff should not be required to plead evidentiary matters. Hassler v. Saracena, 60 Dauph. 237 (1949), stated that preliminary objections should not be used to secure details of which the objector has as much knowledge or more than his opponent. Dutchess Underwear Co. v. Swan Mfg. Co., 75 D. & C. 185 (1950), stands for the proposition that the entire pleading must be scrutinized as a whole. It is clear that since the introduction of the rules of discovery, the scope of the motion for a more specific complaint has been considerably narrowed: Ramsey v. Harnett, 7 D. & C. 2d 693 (1956).

In the instant case, the complaint, after identifying the parties, states the date on which plaintiff's decedent came under the care and attention of the various defendants; states for what purpose they were engaged and gives the period during which they attended Mr. Mikula. It avers that after his discharge from the hospital it was learned that as a result of the treatment by defendants "he was suffering from a general decline in his status of nutrition and hydration due to an inadequate fluid level of and nutritional supplementation of his body; and that he was suffering from an infection of the trachea and a bronchial infection due to treatment of him by the defendants who employed methods which fall significantly below the standard of medical care current in the community."

Paragraph 12, the critical section in connection with the charges of insufficiency, is as follows:

"The negligence of defendants at the time and place aforesaid, consisted of the following:

"a. Failure to maintain the proper nutritional level of the body of plaintiff's decedent during the course of his hospitalization, and particularly during the period of time from January 15, 1969, to January 24, 1969.

"b. Failure to maintain the proper hydration level of the body of plaintiff's decedent during the course of his hospitalization and particularly during the period of time from January 15, 1969, to January 24, 1969.

"c. Failure to properly diagnose plaintiff's decedent's obviously poor condition of malnutrition and dehydration during the course of his hospitalization, and particularly during the period of time from January 15, 1969, to January 24, 1969.

"d. Failure to treat plaintiff's decedent's obviously poor condition of malnutrition and dehydration with proper and expeditious medical attention and medication during the course of his hospitalization, and particularly during the period of time from January 15, 1969 to January 24, 1969.

"e. Failure to properly diagnose and treat an infection called klebsiella, which developed in the body of plaintiff's decedent resulting from the improper care, cleaning or removal of the trache tube or the inner cannula of the trache tube inserted in the body of plaintiff's decedent, said failure having occurred during the course of the hospitalization of decedent, and in particular, during the period of time from on or about December 14, 1968, to on or about December 22, 1968.

"f. Failure to properly diagnose and treat a recur-

rent bronchial infection, which developed in the body of plaintiff's decedent sometime during the course of his hospitalization at the Harrisburg Polyclinic Hospital.

"g. Failure to properly diagnose and treat a jaundiced condition which developed in the body of plaintiff's decedent sometime during the course of his hospitalization at the Harrisburg Polyclinic Hospital.

"h. Failure to observe the standards of medical skill and care current in the community.

"i. Failure to exercise toward plaintiff's decedent all of the medical techniques known to the medical community to sustain life and restore some degree of health to a patient."

It would seem from an examination of this paragraph that considerable detail is set forth with respect to the charges of negligence. It is true that subdivisions h and i are quite general in nature, and we would agree that if these were the only averments of negligence, they would fall far short of informing defendants of the basis of plaintiff's charge.

A somewhat similar situation was presented to this court in Catina v. Markley, 77 Dauph. 330 (1961), where, after various specific allegations, the complaint concluded with the charge that defendant "otherwise failed to exercise the degree of skill and care commonly exercised by physicians and neurosurgeons." It was pointed out that when this paragraph was read in connection with the other specific charges of negligence, it was not vague and uninformative, Judge Sohn stating: "This may be a 'catch-all' pleading, but when read in connection with all the other allegations of negligence we do not deem it to be objectionable."

Defendants, citing Pa. R.C.P. 1019(f), which

requires that "averments of time . . . shall be specifically stated," assert that the pleading is defective because it does not specify the particular dates on which the negligence of the defendants occurred. However, an examination of paragraph 12 indicates that following most of the acts of negligence a period is given, to wit, the charges in 12(a), (b), (c) and (d) are alleged to have occurred between January 15, 1969, and January 24, 1969; the alleged negligence in subdivision (e) between December 14, 1968, and December 22, 1968; and the acts in subdivisions (f) and (g) during plaintiff's decedent's stay at the Polyclinic Hospital.

In some cases, dates certain rather than periods of time might be required, but when one considers that defendants from the hospital and office records are certainly aware of the time in which various treatment was rendered, it would seem that there is sufficient accuracy so that the various defendants may know upon what grounds to make their defense. "Plaintiffs are not required to plead specifically matters about which the defendants have much greater knowledge": Commonwealth ex rel. Cleland v. Myers, Supt., 82 Dauph. 390, 396 (1964).

There does appear to be justification for defendants' protest that legally sufficient pleading requires that the acts of negligence be delineated against the various defendants, particularly with respect to the corporate defendant, Harrisburg Polyclinic Hospital. As stated above, the averred negligence is set forth in one paragraph and is simply charged to "defendants." Paragraph 11 is of little help in this regard because it simply states that the incidents were caused by the "joint and several negligence of the defendants herein." While no specific rule of pleading appears to require separate paragraphs for

each defendant, it would seem that in a situation of this type involving, as it does, individual defendants and corporate defendants with no allegation of agency, and considering the looseness of the averments of negligence which, although legally sufficient, hardly constitute the most refined pleading each defendant should be apprised of the negligence charged to him.

Then, too, it must be remembered that in a malpractice action the professional skill of individuals who have devoted years to training, acquiring a reputation and developing a practice, are called into question and certainly more care should be exacted in allegations against these persons than in the more common vehicular situation.

In Bruaw v. Weaver, 68 York 13, 15 (1954), it was stated:

"We think that a physician charged with negligence and unskillfulness in the practice of his profession is entitled to be advised of the specific acts of commission or omission which constitutes the negligence at unskillfulness complained of, so that the plaintiff's proof may be confined to such acts, and so that he may reasonably prepare for his defense."

Viewing thus the totality of the situation with respect to lack of specificity, although we find that the acts of negligence and the averments of time are legally sufficient, we do feel it is necessary that each defendant be apprised of the particular negligence with which he is charged.

*MOTIONS TO STRIKE DAMAGE ALLEGATIONS
IN THE WRONGFUL DEATH ACTIONS
BECAUSE OF LACK OF CONFORMITY
TO LAW*

All defendants have filed a motion to strike para-

graphs 21, 22 and 23 of the complaint on the basis that the damages set forth therein are not recoverable under the wrongful death action. The offending paragraphs are as follows:

"21. As a result of the death of plaintiff's decedent, Mary Mikula as survivor has been deprived of the comfort, aid, assistance, society, tutelage, maintenance and services that she would have received from him for the remainder of his natural life.

"22. As a result of the death of plaintiff's decedent, the earning power of plaintiff's decedent was destroyed.

"23. As a result of the death of Joseph Mikula, deceased, Mary Mikula has been subjected to great mental anguish."

Technically, plaintiff does not specifically claim damages in these paragraphs as is done in paragraph 20[1] which correctly sets forth the damages in a wrongful death action. However, it can certainly be inferred that such was the intent of the allegations.

It seems clear that the matters set forth in the foregoing paragraph are not proper in a wrongful death action and should, therefore, be stricken from the complaint.

The measure of damages in a wrongful death action is discussed in Gaydos v. Domabyl, 301 Pa. 523 (1930):

"Pecuniary loss is not the same measure of damages

---

[1] Plaintiff, Mary Mikula, as administratrix of the estate of Joseph Mikula, deceased, claims damages for the pecuniary loss suffered by decedent's survivor and the contributions received from him by reason of the death of the said Joseph Mikula, deceased, as well as reimbursement for funeral expenses and other expenses incurred in connection therewith.

used in an ordinary negligence case where death does not ensue. In such cases, recovery may be had for medical and other expenses, physical pain and mental distress, loss of time and earning power caused by the injury: Penna. & Ohio Canal v. Graham, 63 Pa. 290, 299; Goodhart v. P.R.R., 177 Pa. 1, 14; Willis v. Traction Co., 189 Pa. 430; but damages in death cases do not include a claim for mental suffering, grief or distress of mind (McHugh v. Schlosser, supra; Regan v. Davis, supra), nor for the loss of the society or companionship, as such, of children or parents (Caldwell v. Brown, supra; Palmer v. Phila., etc., Railroad Co., 218 Pa. 114, 120). Pecuniary loss does not include loss of the earning power of the deceased as such, nor the value of the deceased's life as such nor as property, as property is generally known."

In Ferne v. Chadderton, 363 Pa. 191, 197 (1949), it is stated:

"Defendants are justified in their contention that the court's charge was neither clear nor accurate in regard to the measure of damages recoverable in this kind of action. Under the Death Statutes the administratrix was entitled to recover for the benefit of the daughter and herself as widow the amount of the pecuniary loss they suffered by reason of decedent's death, that is to say, the present worth of the amount they probably would have received from his earnings for their support during the period of his life expectancy and while the family relationship continued between them, but without any allowance for mental suffering, grief, or loss of companionship; in other words, the measure of damages is the value of the decedent's life to the parties specified in the statute: Minkin v. Minkin, 336 Pa. 49, 55, 7 A. 2d 461, 464. Recovery is also allowed for the expense incurred for medical and surgical care, for nursing

of the deceased, and for the reasonable funeral expenses: Act of May 13, 1927, P. L. 992."

Plaintiff, in defense, particularly of paragraph 21, cites Spangler v. Helm's N.Y.—Pgh. M. Express, 396 Pa. 482 (1959), where the court in dicta and in the incomparable language of Justice Musmanno, discourses on the value of a mother.[2] This adjectival exhuberance has been criticised by the Third Circuit Court of Appeals in Haddigan v. Harkins, 441 F. 2d 844 (1970), and indeed, in view of the above cases and subsequent decisions, does not appear to be the law of Pennsylvania. True, it is as averred in paragraph 22 that plaintiff's decedent's earning power has been destroyed but this, in and of itself, while forming a basis for .the damages under both the wrongful death and survival action, is not an item of damage. Nor, as plaintiff, in fact, concedes, is the item of mental anguish pleaded in paragraph 23. See Marko v. Philadelphia Transportation Company, 420 Pa. 124 (1966).

## DEMURRERS TO PLAINTIFF'S ALLEGED CAUSE OF ACTION UNDER THE WRONGFUL DEATH STATUTE

The four defendants have filed objection in the nature of a demurrer to plaintiff's first cause of action which claims damages for wrongful death. The action was commenced on January 22, 1971, and Joseph Mikula died August 10, 1969. The Act of

---

[2] "The evidence reveals that Mrs. Spangler was unstintingly devoted to her family. The record shows that her loyalty was expressed in an incessant activity, tireless energy, and never-flagging concern. . . All these things—such as companionship, comfort, society, guidance, solace, and protection which go into the vase of family happiness—are the things for which a wrongdoer must pay when he shatters the vase."

April 26, 1855, P. L. 309, 12 PS §1603, provides in section 2 that the action shall be brought within one year after death and not thereafter.

It has been held that the period of limitations in both a wrongful death and survival act are general statutes of limitations and not statutes of repose: Echon, Admrx. v. Pennsylvania Railroad Company, 365 Pa. 529 (1950); Goldstein v. Stadler, 417 Pa. 589 (1965), and Bellotti v. Spaeder, 433 Pa. 219 (1969).

Pennsylvania Rules of Civil Procedure, 1017 and 1030 make this distinction critical in connection with defendant's demurrer.

It is provided in Pa. R. C. P. 1017(b)(4) that:

"A demurrer . . . may include the bar of a nonwaivable statute of limitations . . . which bars or destroys the right of action and the applicability of which appears on the face of the complaint . . ."

Pa. R. C. P. 1030 provides:

"All affirmative defenses, including but not limited to the defenses of accord and satisfaction . . . and, unless previously raised by demurrer and sustained, the defenses of statute of frauds and statute of limitations, shall be pleaded in a responsive pleading under the heading of New Matter: . . ."

As pointed out in the commentaries to the rules in Goodrich-Amram the defense of statute of limitations may be raised *only* by new matter in defendant's answer unless the statute provides a bar against plaintiff: (1) which cannot be waived by defendant; (2) which destroys the right of action of plaintiff; and (3) the applicability of which appears on the face of plaintiff's complaint. If any of these three requirements are absent, the defense may not be raised in a demurrer.

While conceding this, several of defendants take the position that plaintiff has waived her objection to this

procedural defect by not filing preliminary objections to defendants' preliminary objections, citing Rufo v. Bastian-Blessing Co., 417 Pa. 107 (1965). There, plaintiffs did not raise any question in the court below of whether defendant's pleading which raised the statute of limitations in a preliminary objection was defective. The court then went on to point out that, even more importantly, plaintiffs not only failed to object but also answered and denied defendant's preliminary objections; in effect, treating it as new matter. The court found, therefore, there was no prejudice involved and overruled the objection. This is, of course, quite a different situation from the present one.

It seems particularly appropriate in this case with the somewhat indefinite dates and various involvements of the various defendants, that the issue be raised by way of answer. Defendants' demurrers are, therefore, overruled.

We here note that under date of December 14, 1971, there was filed with the prothonotary a document entitled "Affidavit" wherein plaintiff, under date of December 7, 1971, in response to the preliminary objections of defendants with respect to the statute of limitations, asserted that she was prevented from obtaining knowledge of defendants' negligence because one of the defendants, Roderick W. Cook, Jr., had deliberately concealed the acts of negligence. This should be incorporated into an amended pleading and not left dangling in the record. It should also be noted parenthetically that the preliminary objections raising this defense were filed in July of 1971, that Dr. Cook died November 24, 1971, and that thereafter said affidavit was sworn to and filed.

Accordingly, we make the following

## ORDER

And now, March 21, 1972, the preliminary objec-

tions are sustained in part and overruled in part as set forth above and plaintiff is directed to file an amended complaint in accordance with this opinion within 20 days.