## Congregational Conference Appeal.

Argued May 22, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert Siegel,* with him *Harry L. Siegel,* for appellant.

*Harold W. Houck,* with him *Albert Houck,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, June 29, 1945:

In this proceeding a petition for a declaratory judgment asks for judicial construction of a clause in a deed. We believe that the provision in question should receive a more pragmatic and less literal interpretation than that given it by the court below.

On December 15, 1931, Rachel J. Hartman, an elderly spinster, conveyed, as a gift, to the Congregational Conference of Pennsylvania (now known as Conference of Congregational and Christian Churches of Pennsylvania) a farm owned by her in Mifflin County of approximately 169 acres containing thereon a stand of virgin timber of approximately 35 acres. A so-called "reservation" in the deed was as follows: "That this deed of conveyance is made with the understanding that the property shall never be sold or conveyed to any other than the Protestant Christian Church, nor used for any other purpose than for the educational or charitable work of the Christian Church. No standing green timber can be cut or removed from any of the lands except in case for necessary driveways".

Miss Hartman died on July 29, 1932, leaving to survive her as her sole heir-at-law her nephew, Harry Z. Haines, who died in 1939 survived by his widow Katherine E. Haines and his son Harry Hartman Haines.

In a petition naming this widow and son as respondents, the Conference of Congregational and Christian Churches of Pennsylvania sets forth that it has been informed by experts in the art of forestry that "a large portion of the trees [in the 35 acre tract] have matured

and a considerable portion are either dead or dying; that a number of the trees have become deformed, diseased and stagnated, and by their presence and domination stagnate and infect smaller and potentially growing trees, and that, unless the matured, dead, deformed, diseased or stagnated trees are immediately removed by cutting, the entire stand of trees now upon that area will become deformed, diseased and stagnated and of no benefit or value in beauty or development to the forest area or to the entire premises, and that, therefore, the prime purpose of the reservation referred to, of preserving and maintaining an area of growing trees, will be defeated and impossible of fulfillment". Accordingly it requests a decree which will construe the provision that "No standing green timber can be cut or removed from any of the lands except in case for necessary driveways" and will declare its rights thereunder to cut and remove any of the trees.

An answer to the petition was filed by respondents and testimony was taken. A District Forester in charge of the district in which the Hartman farm is located testified on behalf of the petitioner that he had made a survey and found trees that were declining in growth; that in order to maintain a growing forest it is advisable to make selective cuttings and thereby accelerate nature's process of eliminating the weaker and older trees; that all trees having a diameter of eighteen inches and over at a height of 4½ feet above the ground, as well as all crooked and deformed trees, should be cut; that this is in accordance with the accepted practice of good forestry; that if no such operation is performed there will be "a lot of waste and decay" and "old veterans" will top and stagnate the younger growth; that a forest ought to be "gone over" at least every ten years, and that "a virgin forest is not a beautiful thing to see, because of the death and decay". An expert witness for respondents testified, on the other hand, that every forest, if left unmolested, will maintain and re-

produce itself by natural processes, and that trees eighteen or more inches in diameter are not necessarily on the decline but may continue to grow indefinitely.

The learned judge who heard the case expressed the opinion that "This conveyance was made with no idea of being a commercial venture, and if all timber over eighteen inches in diameter could be at will removed, none then might ever be allowed to grow larger than that, and there is nothing more beautiful than a large tree. The removal or cutting of some timber always greatly damages that left standing and leaves an unsightly appearance in the forest for years. The green timber means live growing timber in contrast to dead timber." He concluded that under the restriction in question the petitioner has no right to cut or remove any standing green timber whatever, except when necessary for the construction of driveways. Accordingly the court dismissed the petition and entered judgment for the respondents.

The arguments before this court wandered off into a discussion of the legal effect of the provision in the deed that the property should never be sold or conveyed to any other than the Protestant Christian Church nor used for any other purpose than for the educational or charitable work of the Christian Church. However, we are not now called upon to determine whether, notwithstanding that limitation, an absolute fee passed under the conveyance, or whether there was vested in the grantee merely a base estate determinable upon the property being sold, conveyed or used in violation of the prescribed terms. Not only is such a determination not requested in the petition, but this provision cannot properly be made the subject of a declaratory judgment because the contingency upon which a right of re-entry might arise is obviously remote and may in fact never happen.

Coming, then, to a consideration of the clause that "No standing green timber can be cut or removed from

any of the lands except in case for necessary driveways", we observe, in the first place, that while this is an entirely proper and valid restriction and, as such, enforceable by any party in interest, it does not constitute a condition subsequent the violation of which would work a forfeiture of the estate. The law prefers the free and untrammeled use of property, and therefore, when there is any doubt as to whether a clause in a deed restricting the enjoyment of the land is a condition or merely a covenant, the latter construction is always favored: *Methodist Church v. Old Columbia Public Ground Co.*, 103 Pa. 608; *Dempwolf v. Greybill*, 213 Pa. 163, 170, 62 A. 645, 647; 7 Thompson on Real Property (1940 ed.) sections 3568, 3575. Here there is not the slightest indication, expressed or implied, that the grantor intended that the property should revert to her or her heirs if the grantee were to cut any of the trees in violation of the prohibitory provision.

The principal subject of petitioner's inquiry is the extent to which Miss Hartman intended to forbid the cutting or removal of any other than dead timber. It is apparent that she was a lover of trees, that she had an abiding and sentimental affection for this forest, and that she wished to insure its preservation because of its aesthetic beauty and what to her was its spiritual significance. Accordingly she desired to prohibit the grantee from injuring or destroying the trees in the pursuit of any worldly or commercial objective. But we do not believe that she intended to go so far as to say that no tree in which any degree of life remained could be cut down even though it should be deemed best by scientific experts to do so in order to facilitate the growth of the seedlings, to give the smaller trees a better chance to develop, and thus to insure the most favorable conditions for the improvement of the forest as a whole. If it be true that good forestry requires that there be a periodical removal of decadent trees in order to make way for the growth of the young and the hardy, the ob-

ject which Miss Hartman had in view would be defeated rather than aided if such a measure were to be prohibited through an interpretation of this clause of the deed which, in pursuing its letter, would be losing sight of its fundamental purpose. There was testimony that she herself, in 1930, after a severe drought, had had a great many of the trees cut, including not only dead ones, but some that were merely declining and defective. We are not to be understood as expressing an opinion confirming the testimony of the petitioner's expert that all trees of a diameter of eighteen inches or more have fully matured and should be removed; such trees, although ripe for cutting for commercial purposes, might still thrive for many years as objects of beauty; we are holding merely that this prohibitory clause is not to be construed as preventing the grantee from cutting, or removing timber, even though still green, if done in pursuance of expert advice that such action was reasonably necessary or desirable for the purpose of fostering the better development, beautification and preservation of the forest.

The judgment or decree of the court below is reversed; the petition is reinstated, and it is hereby declared that the petitioner may, from time to time, cut or remove from the lands conveyed to it by Rachel J. Hartman such standing green timber as it is reasonably necessary or desirable to cut or remove for the better development, beautification and preservation of the forest as a whole, but may not cut or remove any standing green timber for use, sale or other commercial purpose.* Petitioner to pay the costs.

---

* While trees may not be cut by the grantee for use or sale by it, there is, of course, no reason why the grantee should not be allowed to use or sell such timber as it is allowed to remove or cut for the purpose and within the limitations herein expressed.