Eureka Casualty Company, Appellant, *v.*
Henderson.

Argued October 1, 1952. Before STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Fred B. Trescher,* with him *Kunkle & Trescher,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 18, 1952:

The court below correctly held that this was not a case for declaratory judgment.

A policy issued by plaintiff, Eureka Casualty Company, to defendant, May Henderson, provided that the Company would pay on behalf of the insured all sums which the latter should become obligated to pay by reason of the liability imposed upon her by law for damages sustained by any person or persons and caused by accident arising out of the ownership, maintenance or use of the premises 213 Sixth Avenue, New Kensington, Pa. These premises were a private residence of which the insured was co-owner with her sister Charlotte Henderson and which they both occupied. While the policy was in force another sister of defendant, Mrs. Elizabeth Quentin, a resident of Port Washington, New York, on the occasion of a visit to defendant's home accidentally fell in one of the bedrooms and thereby sustained injuries. The cause of the fall does not appear, but there is an intimation that Mrs. Quentin may have slipped on the hardwood floor or on one of the rugs. She brought no suit in Pennsylvania against defendant during the period of the Statute of Limitations, but did institute an action in Nassau County, New York, in which State apparently the Statute of Limitations had not barred the suit.

Thereupon plaintiff filed in the Court of Common Pleas of Westmoreland County a petition for declaratory judgment, in which it averred that, upon being

notified of the accident, it made an immediate investigation of the premises and found them in good condition; that it interviewed the three sisters and all of them described the fall as an unavoidable mishap and that there was no hazardous condition in the room in which the fall occurred and that they did not know the cause of the fall; that plaintiff thereupon notified Mrs. Quentin that there was no liability imposed by law on the insured and therefore no obligation on plaintiff's part to assume any responsibility for the claim. The petition set forth express conditions of the policy to the effect that the insured would cooperate with the Company in the event of an accident and a claim therefor, that she would, upon the Company's request, assist in securing and giving evidence, and that the title and ownership of the premises were as stated in the policy. It was averred that she had violated and failed to comply with these conditions in that she had repeatedly refused to give a written statement concerning the circumstances of the accident and the conditions existing at the premises, that she had repeatedly advised her sister Charlotte not to give any such written statement, that she had frequently asserted that she would see that her sister Elizabeth was paid for her injuries notwithstanding the terms of the policy and she would help her to recover against plaintiff, and that she had often demanded that plaintiff make a settlement with Mrs. Quentin notwithstanding the fact that there was no liability imposed by law upon the defendant because there was no negligence on her part. It was further stated that the title and ownership of the premises were not in defendant alone but that Charlotte Henderson was a co-owner, that defendant had entered into a collusive agreement with Mrs. Quentin to be present at the latter's place of business in New York so as to permit of service of a summons being

made upon her there and to have the action in New York instituted against defendant alone, whereas, the liability, if any, would be upon her and her sister Charlotte; finally, that she had failed to give immediate notice to plaintiff of the fact that a summons had been served upon her. By reason of these alleged facts plaintiff averred that defendant had forfeited all rights to protection under the policy, and the court was requested to enter judgment to that effect and that plaintiff was under no obligation to defend the action in New York or to pay any judgment that might be obtained therein.

To this petition defendant answered that she had given to plaintiff's agent full details in regard to the happening of the accident, and she denied that she had violated or failed to comply with any of the conditions of the policy. She averred that she had never been requested to give a written statement and if such a request were made she was ready and willing to furnish one; she denied that she had repeatedly advised her sister Charlotte not to give any written statement concerning the condition of the premises or the circumstances of the accident, or that she had frequently asserted that she would see that her sister Elizabeth was paid for the injury notwithstanding the terms of the policy; she stated that she had been under the impression that the policy covered any accident on the premises. She denied that she had repeatedly asserted that she would help Mrs. Quentin to recover against plaintiff or that she had frequently demanded that plaintiff make a settlement with her sister notwithstanding the fact that the law imposed no liability upon her. She denied that she had entered into any collusive agreement with her sister Elizabeth for the purpose of having service made upon her in New York or of having such an action instituted, or that she had failed to give plaintiff immediate notice of the service of the

summons. She admitted that the title and ownership of the premises were in herself and her sister Charlotte.

Plaintiff presented the case for hearing to the court below and called defendant for cross-examination as to the facts concerning the happening of the accident and her alleged non-compliance with the conditions of the policy; in answering the questions propounded to her she supported in general her denials of any failure on her part to observe those conditions. The court dismissed the petition for declaratory judgment, and plaintiff now appeals from the court's order so decreeing.

We start with the fundamental proposition that whether or not a court will take jurisdiction of a petition for a declaratory judgment or decree is purely a matter of judicial discretion. The Act of May 26, 1943, P. L. 645, employing in that regard the same phraseology as the preceding Act of April 25, 1935, P. L. 72, provided that "Relief by declaratory judgment or decree *may* be granted in all civil cases where" . . . etc., and it merely set forth certain circumstances which would not necessarily debar the granting of such relief if otherwise deemed desirable; it provided that conditions there specified "shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present." This discretionary character of the judicial process in such actions has been consistently proclaimed by this court ever since declaratory judgments first came into being: *Kariher's Petition (No. 1)*, 284 Pa. 455, 471, 131 A. 265, 271; *Carwithen's Estate*, 327 Pa. 490, 494, 194 A. 743, 745; *Capital Bank and Trust Company's Petition*, 336 Pa. 108, 111, 6 A. 2d 790, 792; *Kahn v. William Goldman Theatres, Inc.*, 341 Pa. 32, 35, 17 A. 2d 340, 341; *Schoenbrun v. Nettrour*, 360 Pa. 474, 477, 61 A. 2d 868, 869.

The question arises, therefore, whether, under the facts here presented, judicial discretion would be wisely exercised if plaintiff's petition were granted. One of the chief objectives which declaratory judgment procedure was aimed to accomplish was the furnishing of an expeditious remedy for the settlement of claims, which, in the words of the statute, "indicate imminent and inevitable litigation",—to settle controversies which, for some reason or other, could be determined more advantageously if settled promptly rather than at some future time when they would require adjudication. In the present case there cannot be said to be a probability, much less a certainty, that the incipient controversy which now exists between these parties will ever ripen into litigation since it cannot be assumed that the suit in New York will result in a verdict for Mrs. Quentin; on the contrary, if, as plaintiff now confidently asserts, its investigation disclosed that Mrs. Quentin's fall was not due to any negligence on the part of defendant, and that the sisters made admissions to that effect, the verdict may well be for defendant, in which case no claim against plaintiff would arise. No question is raised here as to the interpretation of any of the terms of the policy, but merely one of fact as to whether defendant failed to comply with the duty imposed upon her of cooperation with the Company; a trial or hearing now held to weigh the conflicting testimony bearing on that issue and to determine it accordingly might prove to be a wholly useless proceeding. It was said in *Capital Bank and Trust Company's Petition,* 336 Pa. 108, 111, 6 A. 2d 790, 792; ". . . the vital factor in the assumption of jurisdiction is the presence of antagonistic claims indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy: . . . . Tested

in light of the foregoing principles, the present petition fails to support the relief there sought. Rather it is an attempt to get the court to decide future rights *in anticipation of an event which may not happen.*" (Italics supplied.) In *Kahn v. William Goldman Theatres, Inc.*, 341 Pa. 32, 35, 17 A. 2d 340, 341, it was held that the petition there presented for a declaratory judgment should be dismissed because the plaintiff was attempting "to get the court to decide future rights *in anticipation of an event which may never happen.*" In *Congregational Conference Appeal*, 352 Pa. 470, 473, 43 A. 2d 1, 2, 3, it was said: ". . . we are not now called upon to determine whether . . . an absolute fee passed under the conveyance, or whether there was vested in the grantee merely a base estate determinable upon the property being sold, conveyed or used in violation of the prescribed terms. . . . this provision cannot properly be made the subject of a declaratory judgment because the contingency upon which a right of re-entry might arise is obviously remote and *may in fact never happen.*" (Italics supplied.) In *Schoenbrun v. Nettrour*, 360 Pa. 474, 476, 477, 61 A. 2d 868, 869, it was said: "Their [the plaintiffs'] only present interest is to avail themselves of an offer by the defendant vendors to return the hand-money to the corporate plaintiff upon a contingency *that may never happen*: . . . . Such an uncertain interest cannot be made the subject of a declaratory judgment proceeding: . . . ." (Italics supplied.) In *Malick's Petition*, 133 Pa. Superior Ct. 53, 59, 1 A. 2d 550, 553, it was said: "In general, courts lack power to decide questions which *when presented are wholly moot*, but which *may* arise in the future if certain events happen, and particularly where an adequate remedy is available should the contingency arise."

Under the facts and circumstances here present we are, therefore, of opinion that plaintiff should be rele-

gated for the establishment of its defense to any action that may be brought against it to recover under its policy rather than to have the court now conduct a declaratory judgment proceeding which, as already stated, may prove to be merely academic, and we think that the court below, in the exercise of judicial discretion, properly so determined. We are not unaware of the fact that greater latitude prevails, perhaps, in some other jurisdictions in entertaining declaratory judgment proceedings, but the general trend of our own decisions has been markedly to the contrary.

Decree affirmed at plaintiff's costs.