## McCandless Township *v.* Wylie, Appellant.

Argued October 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert Van der Voort*, with him *John F. Healy* and *Van der Voort, Royston, Robb & Leonard*, for appellants.

*Thomas P. Geer*, Solicitor, with him *McMonigle, Geer & Moore*, for appellee.

*Frederic G. Weir*, for Western Pennsylvania Chiefs' of Police Association, intervenor.

OPINION BY MR. JUSTICE CHIDSEY, November 17, 1953:

Harry E. Wylie and John M. Geisler, two of the defendants in a declaratory judgment proceeding instituted by the first class Township of McCandless, appeal from the order of the lower court sitting en banc, the majority of whom sustained the action of

the Township Commissioners in discharging appellants as police officers. Following the filing of an answer to the Township's petition, the parties entered into a stipulation of agreed facts which constituted the record before the lower court. The Western Pennsylvania Chiefs of Police Association was granted leave by the lower court to intervene on behalf of Wylie and Geisler.

On November 4, 1952 McCandless Township was a second class township. On that date an election was held in which the voters voted to change the Township from a second to a first class township. On November 25, 1952 the County Commissioners of Allegheny County certified to such election result. At the time of the election, McCandless Township had in its employ the appellants Wylie and Geisler, one Roy Yingling and one William Blakely, all of whom had become permanent full-time police on October 10, 1952. It also had in its employ one Frank F. Raupp who had been a policeman for more than 17 years, but was temporarily released from the police force because of illness. On December 24, 1952 the court of common pleas appointed five commissioners for the new first class township who, after taking oath as such on January 5, 1953, on the same day appointed a Civil Service Commission of three members under the provisions of the 1949 First Class Township Code. Although this Commission prepared rules and regulations, they had not been approved by the McCandless Township Commissioners at the time of the hearing in the lower court. On the same day, January 5, 1953, the new Township Commissioners appointed three temporary policemen, namely, the above named William Blakely and Roy Yingling as patrolmen (thus continuing their former employment) and Maurice J. McCann as chief of police; they also instructed the Secretary of the Town-

ship to advise appellants Wylie and Geisler by letter that they were relieved of their duties. On April 8, 1953 the Township Commissioners were officially notified that appellants Wylie and Geisler protested termination of their employment and demanded reinstatement.

Under the pleadings, two questions are presented: (1) Do the employment rights conferred by the Police Tenure Act of June 15, 1951, upon police officers of a second class township survive when the township becomes one of the first class? (2) If the first question is answered in the affirmative, then are the police officers obliged to acquire civil service status under the First Class Township Code of 1949 which repealed the Police Civil Service Act of 1941, so far as it related to townships of the first class, but reenacted its civil service provisions?

A question preliminarily arises whether this is a proper case for declaratory judgment. If only the first stated question were involved, a proceeding by appellants in mandamus against the Township Commissioners for reinstatement would have been not only an adequate but the proper remedy. However, the two questions involved are interrelated, and appellants' contention embraces both in that it is claimed by them that under the Police Tenure Act they are entitled unconditionally to continue in their employment. The appellee Township not only contends that appellants have no employment rights but that even if they do, they must nevertheless in due course acquire civil service status under the civil service provisions of the Township Code. We have held that a declaratory judgment will not be rendered to decide future rights in anticipation of an event which may never happen and that a petition for declaratory judgment is properly dismissed where the proceeding may prove to be merely

academic: *Eureka Casualty Company v. Henderson,*
371 Pa. 587, 92 A. 2d 551. Here if it is determined that
the employment rights of appellants did not survive
the change in classification of the Township, the whole
controversy is settled. But, on the other hand, if it
is determined that appellants' rights do survive, the
controversy will continue to exist with respect to the
necessity of their acquiring civil service status. It is
evident that a determination only that the appellants
are entitled to be reinstated will not settle the entire
existing controversy, and immediate further litigation
is inevitable. Under the circumstances, and especially
since this case is one of public interest and state-wide
importance, we will entertain and fully dispose of the
proceeding.

Prior to 1941, police employed by boroughs, incor-
porated towns and townships had no civil service or
job tenure rights and were subject to removal, without
cause, at the pleasure of the authority that appointed
them. The Police Civil Service Act of 1941, June 5,
P. L. 84, 53 PS §351.1 et seq., changed this situation
with regard to boroughs, incorporated towns and town-
ships of the first class, *employing three or more police.*
Police employed by such municipalities were granted
job tenure rights which prohibited their dismissal ex-
cept for causes stated in the statute, after public hear-
ing and with right of appeal to the courts. The First
Class Township Code of May 27, 1949, P. L. 1955, 53
PS §19092-101 et seq., which extensively reenacted,
amended and added to The First Class Township Law
of 1931, repealed the Police Civil Service Act so far
as it related to townships of the first class but sub-
stantially reenacted its civil service provisions. Legis-
lation to this point only partially endorsed and grant-
ed police tenure. In boroughs, incorporated towns and
townships of the first class, job tenure was limited to

police forces of three or more members and in townships of the second class no job tenure was provided, whatever might be the size of the police force. Evidently to remedy an obviously inequitable situation, the Legislature in 1951 passed the Police Tenure Act (Act of June 15, 1951, P. L. 586, 53 PS §352.1 et seq.) which extended tenure to police forces of less than three members in boroughs, incorporated towns and townships of the first class and to all police forces of townships of the second class, regardless of the number employed. This was an expression of public policy to grant job tenure to all police employed by such municipalities regardless of their political classification. The desirability of granting employment security has long been recognized as mutually beneficial to employer and employe.

The appellee township argues that the Police Tenure Act is clearly limited in its application to townships of the first class having a police force of less than three members, and here we have a township which contemplates and has appointed three police, thereby making the civil service provisions of the 1949 First Class Township Code applicable; that when McCandless became a first class township there was a governmental change, a new entity was created and the new commissioners could start "from scratch"; they could ignore all policemen employed by its municipal predecessor and appoint a new police force of three or more members.

In *Simpson v. South Mahoning Township School Board et al.*, 365 Pa. 567, 76 A. 2d 385, this Court held that upon the consolidation of two school districts into a joint school, the teachers (professional employes) had the right to continued employment, and that the joint board was required to continue to employ teachers in accordance with their seniority unless it was

necessary to reduce the staff of teachers, under the provisions in the Teachers' Tenure Act for the reduction of the number of teachers. In thus reversing the lower court which held that the joint school became a legal entity separate and distinct from its component boards and as such could engage an entirely new teaching staff, Mr. Justice (now Chief Justice) HORACE STERN, speaking for an unanimous Court, said at p. 570: ". . . Since a consolidation of schools is not stated to be one of the valid causes for the termination of a teacher's contract, and since it is only if such consolidation makes it unnecessary to retain the full staff of professional employes that a teacher may be suspended, and then only, under a further provision of section 1205 (b), on the basis of efficiency rank determined by a certain method of rating, it is clear that the decision in *Walker's Appeal* has been superseded and invalidated by this legislation, the express provisions of which clearly control the present controversy . . . .". In the case now before us the Police Tenure Act similarly provides for the removal or suspension of police officers (53 PS §352.2) for certain reasons, including reduction in number (§352.3), but does not set forth as a reason a change in classification of a township. It may be argued that the *Simpson* case is not analogous because the Teachers' Tenure Act contemplated and applied to consolidated school districts whereas the Police Tenure Act, while applying to townships of the second class and townships of the first class having a police force of less than three members, does not apply to townships of the first class having a force of three or more members. The answer to such argument lies in the savings clause contained in the 1949 First Class Township Code which provides: (53 PS §19092-108) "Whenever any township of the second class is designated a township of the

first class, or whenever any township of the first class is reestablished as a township of the second class, all liabilities incurred, rights accrued or vested, obligations issued or contracted, and all suits and prosecutions pending or to be instituted to enforce any right or penalty accrued or punish any offense committed, prior to such change of class, and all ordinances, resolutions, rules and regulations shall continue with the same force and effect as if no such change had been made.".

When the Township changed from second class to first class, appellants had acquired job tenure under the Police Tenure Act of 1951 which clearly created substantial rights and liabilities and which, under the savings clause in the Township Code, survived the transition of the township from second to first class. "Liabilities" is a broader term than "debts". The word "liability" has been held to include an employe's right to reinstatement after wrongful discharge: *National Labor Relations Board v. Universal Camera Corporation*, 179 F. 2d 749, (United States Board of Appeals, Second Circuit, opinion by Judge LEARNED HAND). The Police Tenure Act granted rights to the policemen of second class townships and imposed upon such townships a liability to continue police officers in employment (unless discharged for cause). This liability passed to the Township when it became first class.

In support of its contention that even if appellants' right to employment survived the Township's change in class, they nevertheless were subject to the civil service requirements of the First Class Township Code, appellee points to the case of *Scott Township Civil Service Commission Appeal*, 166 Pa. Superior Ct. 486, 72 A. 2d 137, as decisive. We do not agree. The *Scott* case was decided prior to the passage of the Police Tenure Act of 1951. In that case, Scott Township, a town-

ship of the first class, on April 30, 1947 appointed two policemen, Rodzwicz and Cyprowski, who then comprised the police force. Later in 1947, a third and fourth policeman were appointed, thus making the police force one of three or more in number. In 1948 Rodzwicz and Cyprowski were dismissed. The Superior Court upheld their dismissal because they had not required civil service status under the requirements of the Police Civil Service Act of 1941. Since at the time of their appointment they did not enjoy the job tenure granted by the Act of 1951 to the appellants in the case at bar, the Superior Court did not have for consideration the question posed here.

Under the Township Code the new Commissioners were given the power to appoint policemen and reliance is had upon the common law rule that the power to appoint includes the power to remove. But this rule must give way to a statutory declaration of public policy to the contrary. The liability to employ and the right to be employed under the Police Tenure Act and preserved by the savings clause in The First Class Township Code constitute an expression of public policy. In *Minkin v. Minkin,* 336 Pa. 49, 7 A. 2d 461, Mr. Justice LINN, speaking for this Court, said at p. 52: "The legislation was a declaration of public policy on the subject and necessarily displaced any policy to the contrary, if, in fact, it existed. 'The public policy of a state is certainly indicated by its legislation. In Carpenter's Estate, 170 Pa. 203, [32 A. 637] we said: "How can there be a public policy leading to one conclusion when there is a positive statute directing a precisely opposite conclusion . . . . There can be no public policy which contravenes the positive language of a statute." ' Northern Central Ry. Co. v. Walworth, 193 Pa. 207, 214 et seq., 44 A. 253.". And see *Tragesser v. Cooper et al.,* 313 Pa. 10, 169 A. 376, where it was

said at p. 15: ". . . Being a public policy, it must be applied wherever it fits, and is not to be excluded unless the intention to exclude it is clearly made to appear.". See also *Pittsburgh Public Parking Authority Petition,* 366 Pa. 10, 76 A. 2d 620.

Section 20 of The First Class Township Code of 1949 (53 PS §19092-646), provided that policemen employed at the effective date of the Act should continue to hold their positions without taking the competitive examinations required under the Act's civil service provisions. Thus as to policemen of an existing first class township having a police force of less than three members (who were not required to obtain civil service status under the Police Civil Service Act of 1941) and as to all policemen whose employment antedated the Police Civil Service Act (which contained the same exemption as to existing employes), job tenure was assured by the Township Code without the necessity of obtaining civil service status. We see no sound reason for differentiating in this respect between former employes of a first class township and former employes of a second class township who, upon change of the township from second to first class, by virtue of the Police Tenure Act of 1951 and the savings clause of the Township Code automatically enjoyed job tenure. By the legislation enacted upon the subject we think there was a statutory declaration of public policy not only to grant job tenure to all policemen of the municipalities covered thereby but to exempt those currently employed from the necessity of acquiring civil service status through the taking of competitive examinations. In the present case appellants required no appointment. The Police Tenure Act and the savings clause of the Township Code continued their employment without any action on the part of the new Commissioners.

We conclude that appellants were entitled to a continuation of their employment by the Township when it became a township of the first class; that they are entitled to reinstatement as policemen with back pay and such other rights as are afforded them by the Police Tenure Act of 1951, and that they are not required to acquire civil service status under the provisions of The First Class Township Code.

The judgment entered by the court below is hereby vacated and the record is remanded for the entry of judgment in accordance with this opinion.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

This is not a proper case for a declaratory judgment—a proceeding which is naturally appealing, especially to laymen and experts who have not had much experience in the practicalities of the law.

It will serve as a first step to breach the policy that the Courts of Pennsylvania have heretofore established and maintained against declaratory judgment assaults, namely, the Courts in their judicial discretion, should allow declaratory judgment proceedings —not to decide future rights, but—only when an actual controversy exists or when litigation is imminent and inevitable: *Eureka Casualty Company v. Henderson,* 371 Pa. 587, 92 A. 2d 551; and then only in very exceptional cases. The reasons for this are manifold. The extensive use of declaratory judgment proceedings will result in a multiplicity of litigation which will swamp the Courts. Moreover, because in the particular case then litigated the parties may be interested in only one phase of the subject matter, or because all of the facts may not be then known or not then readily foreseeable, or may not be completely pre-

sented, the decision will often likely result in injustice, either in the case then before the Court or more probably as a precedent in other cases arising out of the same or similar subject matter where new or additional or slightly different facts are for the first time considered by the Court.

Furthermore, under the majority opinion, there is no clear line of demarcation or yardstick or standard which will enable Bench and Bar to determine fairly, certainly, and with justice to all, when such proceedings should lie and when they should not; or to explain or justify our position to litigants and counsel whose petitions for a declaratory judgment are refused.

We note in this case that there are several adequate remedies without resorting to declaratory judgment proceedings. Moreover, the majority could have reached the same result by writing an opinion containing dicta, in which I would have concurred. No matter how often any Judge may deprecate dicta in another Judge's opinion, it is an indisputable fact that every Judge, consciously or unconsciously, often includes dicta in his opinions.

The City of Philadelphia has recently adopted a new Charter, out of which have arisen a number of actual controversies not only pressing in nature and time, but of tremendous public importance. At least 100 important and pressing questions involving a construction of this great Charter will inevitably arise and be litigated in the near future. If there ever was a case or cases where declaratory judgment proceedings should appropriately lie, it would be in cases involving the construction of Philadelphia's new Charter—yet we have rejected a declaratory judgment proceeding in such cases. How can we justify our action here and there?

The decision in this case will establish a regrettable precedent which will come back time and time again to haunt us.