## Petras v. Union Township

*Sanford S. Finder*, for plaintiff.

*Thomas J. Terputac*, for defendant.

WEINER, J., June 21, 1962.—A petition for appeal was filed in the above captioned matter by Edward Petras, plaintiff, against the Township of Union, defendant herein, averring that prior to September 1, 1961, he was employed by the said Township of Union as a police officer; that on September 1, 1961, he was suspended for 30 days; that this suspension was continued again on October 6, 1961, and again on November 3, 1961. On November 28, 1961, he claims he was finally dismissed and the vacancy thus created was filled by one Arthur Gardner. Plaintiff claims that he was a full time employe within the meaning of the Act of June 15, 1951, P. L. 586, 53 PS §811, and that defendant township had failed to conform to the provisions of that statute in connection with both his suspensions and dismissal. Plaintiff therefore asked for an order by the court to reverse the action of the board of supervisors of Union Township and to reinstate him as said police officer with pay for the time involved.

The township contends that plaintiff was employed by the township as a part-time temporary police officer to serve at the will of the supervisors; that plaintiff was notified on several occasions regarding the reasons for his suspension and subsequent discharge, though no claim is made of compliance with the Act of 1951, supra. Moreover, they contend that Union Township employed plaintiff as a part-time temporary police officer under the provisions of the Act of May 1, 1933, P. L. 103, art. V, sec. 590, as amended, 53 PS §65590, and that the Police Tenure Act of 1951, cited by plaintiff, has no application to this matter. Testimony was taken before the Honorable David H. Weiner on two

separate hearing dates, and the matter was then certified over to the court en banc for their consideration.

The township has conceded, and the testimony shows, that no attempt was made by the township to comply with the Police Tenure Act; that no written specifications of charges were furnished within five days nor was any hearing held within ten days as required by the said act. The only hearing held by the township was on November 21, 1961, some 72 days after the alleged suspension. The minutes also fail to show any action or vote taken by the supervisors on any suspension or removal. For all these reasons, appellant contends that he failed to receive the protection afforded him by the provisions of the Act of June 15, 1951, P. L. 586, 53 PS §§ 811-815, and that he was entitled to that protection.

The issue before this court is a relatively simple one. Was appellant entitled to the protection of the Police Tenure Act of June 15, 1951, P. L. 586, 53 PS, §§811-815, or could he be removed at will? The township's error in this argument is their contention that Petras was not appointed under this Act of 1951, but by the authority granted it in the Act of May 1, 1933, P. L. 103. The difficulty with this line of reasoning is that the Act of 1951 is not an act relating to appointment, but solely to the removal of police officers, and the authority for the appointment by the township of police officers is not involved in this proceeding.

The pertinent sections of the statute involved, section 2, 53 PS §812, provides as follows:

"No person employed as a regular full time police officer in any township of the second class . . . shall be suspended or removed except for the following reasons: . . . A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed."

Section 4, 53 PS §814, provides:

". . . The appointing authority shall grant him a public hearing which shall be held within a period of ten days from the filing of charges in writing" . . .

Since clearly the above provisions of the Act of 1951 have not been complied with, if appellant is entitled to the protection of this act, then it follows that his removal from office would be illegal and void. The argument of the township that the Common Law Rule that the power to appoint includes the power to remove as held in the case of Commonwealth ex rel. Bunch v. Beattie, 364 Pa. 572, is no longer applicable to police officers entitled to the protection of the Police Tenure Act. The Supreme Court, through Mr. Justice Chidsey, in McCandless Township v. Wylie, 375 Pa. 378, 382, 383, 385, speaking of the Act of 1951, held that this Common Law Rule must give way to a statutory limitation of public policy to the contrary, in the following language:

"Prior to 1941, police employed by boroughs, incorporated towns and townships had no civil service or job tenure rights and were subject to removal, without cause, at the pleasure of the authority that appointed them. The Police Civil Service Act of 1941, June 5, P. L. 84, 53 PS §351.1 et seq., changed this situation with regard to boroughs, incorporated towns and townships of the first class, employing three or more police. Police employed by such municipalities were granted job tenure rights which prohibited their dismissal except for causes stated in the statute, after public hearing and with right of appeal to the courts. . . . In boroughs, incorporated towns and townships of the first class, job tenure was limited to police forces of three or more members and in townships of the second class no job tenure was provided, whatever might be the size of the police force. Evidently to remedy an obviously inequitable situation, the Legislature in 1951 passed the Police Tenure Act (Act of June 15, 1951, P. L. 586,

53 PS §352.1 et seq.) which extended tenure to police forces of less than three members in boroughs, incorporated towns and townships of the first class and to all police forces of townships of the second class, regardless of the number employed. This was an expression of public policy to grant job tenure to all police employed by such municipalities regardless of their political classification. The desirability of granting employment security has long been recognized as mutually beneficial to employer and employe . . . the Police Tenure Act of 1951 which clearly created substantial rights and liabilities . . . 'Liabilities' is a broader term than 'debts'. The word 'liability' has been held to include an employe's right to reinstatement after wrongful discharge . . ."

The purpose of the act then is abundantly clear. It was intended to prevent the removal of persons like Petras for any but good and valid reasons. A removal as a result of a political dispute, such as indicated or at least inferred in the instant case, was to be prevented. In its place the legislature intended to grant employment security. While it may be only a coincidence, it nevertheless is true that Petras was first suspended and later dismissed following his successful candidacy as a constable against the person who then held the position of chief of police in the said township. This is the type of situation that the Police Tenure Act was designed to protect.

There can be no doubt that Union Township intended to maintain a police force sufficient to protect its citizens. The evidence shows that not only did they want 24-hour protection but provided a police car and supplies to operate its police force. That this intention continues is evidenced by their filling Petras' vacancy so as to maintain police protection for the residents of the township. The supervisors' intention seems to have been to guarantee to the inhabitants of the township

some form of full time police protection. There was always a man on duty or on call to cover any exigency which arose. The duties of the police were usual and customary. The supervisors then have created a full time police force, and this is indicated by the fact that the vacancy created by the removal of appellant was immediately filled. Having done so can they then deny to any individual member of the force the protection of the Act of 1951?

No appellate court in this Commonwealth has defined the full meaning of the words "regular full time police officer" found in section 2 of the Police Tenure Act. The only discussion of this phrase is found in Deskins v. West Brownsville Borough, 388 Pa. 547, 549, 550 (1957), a case which arose in this county. In that case West Brownsville Borough had granted to Deskins, the Chief, a two year employment contract as Chief. The court found he was a full time employe and that the contract limiting his tenure was ineffective saying as follows:

". . . However, the Borough argues that Deskins' two-year limited employment contract prevented him from achieving the status of a 'regular' employe. They would have us read the word 'regular' as requiring a permanent or indefinite term of employment. The purpose of the legislation and the policy it serves leads us to reject their contention. We believe that by the phrase 'regular . . . police officer' the legislature meant to refer to the nature of the job held and the character of the work performed rather than the length of service contracted for.

"The legislature recognized that boroughs and other municipalities may require police officers for casual employment on account of special or temporary circumstances, unusual conditions, and emergencies. Employes so hired would be protected by the Act under this test. But when the post and duties thereof are nor-

mal ones in the administration of the municipal policing function, the tenure protection of the Act shields the employe."

Appellant's duties, as developed by the testimony, were normal police duties. He made patrols, investigated crimes and accidents and performed the normal functions of a police officer. He was available for duty at all times and did on many occasions, after his regular schedule was carried out, work at unscheduled times. Despite that scheduling, all officers were to be available and to be on call at all times.

The Supreme Court has defined full time employment in Harlan v. Washington National Insurance Company, 388 Pa. 88, 89, 92. The court pointed out that while the phrase "full time employment" can and usually does mean a person who is engaged at his given job for the full daily and weekly period which his duties requires it is not restricted to that meaning alone. It may be used to distinguish a permanent employe from a transitory or seasonal employe. The court defined the phrase to mean as follows:

"Full time employment does not mean full-time pay. It means being available for full employment; and full employment does not mean a hand at the helm throughout the entire voyage; it means standing by to take over when the exigencies of the passage require the application of one's skill acquired over many journeys of the past . . ."

The test to be imposed therefore, is not the number of days, length of hours, or term of employment but rather whether or not the duties were such that he was "available for full employment," that is on call at any and all times. Under the testimony of Petras, if called and his services requested, he could and would have worked every day for a full day. This construction is borne out by the reasoning of the court in Deskins v. West Brownsville Borough, supra, where the

court said the legislature intended to cover those persons fulfilling normal policing functions as opposed to those who were employed for special circumstances, unusual conditions or emergenices. This view of "full time" clearly supports the legislative and public policy already referred to.

The court can take judicial notice that the limited budget of most second class townships must necessarily result in limited hours of employment of its police officers for the low pay provided, but nonetheless, the officer for the limited hours required, enjoys the status of full time employment and entitled to the protection of the Police Tenure Act unless such police officer, which is not the case here, is employed only on account of special circumstances, unusual conditions or emergencies and it is so stated and stipulated at the time of his employment.

We adopt the definition found in Harlan v. Washington National Insurance Company, supra, with reference to this case and therefore hold that since plaintiff was required to be available for work during the whole term of his employment, he was in fact a full time employe.

Any other interpretation of "full time police officer" would do grave injury to the Act of 1951. If the legislature had intended the act to apply only to these municipal police officers who worked five days or 40 hours a week or better, it could have been so stated. No other test fits the public policy and pattern of interpretation connected with the Act of 1951. The court is therefore constrained to make the following

*Order*

And now, June 21, 1962, the appeal of Edward Petras from his suspension as police officer in Union Township by the supervisors thereof on September 1, 1961, and his later removal on November 28, 1961,

is hereby sustained and the said Union Township is hereby ordered and directed to reinstate the said Edward Petras as police officer and to pay him the salary due him as such from the date of his suspension to the date of his reinstatement.