## Afflerbach v. McManus

496

*Walter W. Jackson*, for plaintiffs.

*Samuel M. Snipes*, for defendants.

SATTERTHWAITE, P. J. (7th Judicial District, Specially Presiding), April 24, 1964.—By this action in equity, neighboring residents and property owners in Fairless Hills, Falls Township, seek injunctive relief against defendants, who have erected and maintained certain exterior radio and television antennas on their house and lot in alleged violation of building and use restrictions imposed upon all residential properties in the development. The material facts alleged in plaintiff's complaint are substantially all admitted by defendants' answer which, however, denies the validity and enforceability of the restrictions on the ground that they are ambiguous and contrary to public policy; defendants therein also challenge plaintiffs' status as aggrieved parties or as parties entitled to prosecute the action. By way of new matter, which plaintiffs' reply placed in issue, defendants further answered that husband-defendant was an amateur radio operator licensed by the Federal Communications Commission and, as such, made essential use of the radio transmitting and receiving equipment located in his home for civil defense and other public service and humanitarian purposes; that he would be unable to operate

these facilities without the subject radio antennas; that changes in television technology now under way will soon render obsolete present television receiving sets using indoor aerials and will necessitate the use of outdoor antennas for that purpose, resulting in hardship on the Fairless Hills community generally if outside antennas be effectively prohibited. Defendants' new matter further asserted the affirmative defense that plaintiffs, and many if not all other residents of Fairless Hills, had theretofore maintained television or radio antennas on their premises, and that there were further unprosecuted violations of other aspects of the restrictive covenants.

From the admissions in the pleadings, the evidence adduced at the hearing and the subsequent requests for findings submitted by the parties, the chancellor makes the following

FINDINGS OF FACT

1. Plaintiffs are the respective owners and residents of 14 houses and lots located on the plan of Fairless Hills, unit B, sec. II, Falls Township, Bucks County, Pa., as laid out and developed by Danherst Corporation and duly recorded; plaintiffs' properties are all located within one block of the subject property of defendants.

2. Defendants, husband and wife, are the owners and occupants of a house and lot known as 428 Chelsea Road, being lot 24 unit B, sec. II, of the said Fairless Hills plan, having acquired title thereto from Danherst Corporation by deed dated November 11, 1952.

3. The plan known as unit B, sec. II, of Fairless Hills, plots approximately 214 residential lots, including the respective premises of plaintiffs and defendants, all of which were and are subject to a so-called declaration of covenants, restrictions, reservations, exceptions, limitations, rights and easements, which had been executed by Danherst Corporation as the

original developer thereof and recorded on July 7, 1952, in the Office of the Recorder of Deeds of Bucks County.

4. Said declaration, by various subparagraphs, created and imposed restrictions, stated therein to be covenants running with the land until January 1, 1977, with provision for further renewal, by the terms of which the subject lots were limited to single-family residential purposes, with houses required to be of approved plan, location, size and setbacks from street and lot lines. In addition to prohibiting the manufacture and sale of intoxicating liquors, as well as the keeping of poultry or animals, other than house pets, the declaration also provided:

"D. No fence, wall, hedge or mass planting shall be permitted within 25 feet of the front lot line . . .

"I. No flagpole or radio or television aerial shall be erected, placed or permitted to remain on any lot or on any structure erected thereon . . .

"K. If the parties hereto, or any of them, or their heirs or assigns, shall violate or attempt to violate any of the Covenants herein, it shall be lawful for any other person or persons owning any single-family residential lot in Plan of Fairless Hills, Unit B, Section II, as aforesaid, to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant, and either to prevent him or them from so doing or to recover damages or other dues for such violation."

5. Each of the various conveyances of lots on said unit B, sec. II, from Danherst Corporation, including the deeds to the respective plaintiffs and to the defendants, contained an express subjection clause incorporating said declaration therein by reference.

6. Similar restrictions were imposed by Danherst Corporation upon residential lots laid out on other units and sections of the whole Fairless Hills housing

development, which consisted of approximately 2,200 homes.

7. In 1957, husband-defendant became licensed by the Federal Communications Commission as a general class amateur radio operator at the subject premises. Wife-defendant and two of their minor children residing in the subject property are also similarly licensed as amateur radio operators.

8. For any reasonably practical use thereof, the operation of an amateur radio station requires an elevated, exterior antenna of one or more of several possible designs or types.

9. Defendants' use of their amateur radio equipment, including the essential outdoor-elevated antennas in question, although a hobby to them, does serve substantial utilitarian purposes and performs humanitarian and public service functions, especially in times of emergency, both locally within Falls Township and Bucks County in certain police, civil defense and other matters of public concern, as well as for informal long distance communications, through so-called "phone-patches" with the related use of local telephone facilities, between individuals in far reaches of the world, such as servicemen overseas, and their families at home.

10. Beginning in 1957, and continuing thereafter until the present, defendants have erected and maintained on or in the immediate vicinity of the dwelling house on their lot, one or more exterior radio antennas for use under their amateur radio licenses.

11. Each of the houses in Fairless Hills as built by Danherst Corporation, including those of plaintiffs and defendants respectively, was constructed with an interior, built-in television antenna within the attic thereof.

12. The interior television antenna furnished with defendants' home when first constructed in 1952 pro-

vided adequate reception of conventional VHF television signals from Philadelphia transmitters, but was not effective to receive such signals from New York City stations, which could, however, be received in Fairless Hills with an exterior, above-roof, rotatable antenna.

13. Because of deterioration in signal due to oxidation of the metallic elements of the television antenna so built into his house, and also in order to receive New York City stations, husband-defendant replaced the same with a rotatable antenna, likewise located within the attic of his dwelling, but the device was unsatisfactory because of the limited space for rotation and also because of interference created by the metallic shield covering the chimney as it passed through the attic.

14. At an uncertain time prior to 1959, husband-defendant erected an exterior, rotatable, so-called conical or multiple element television antenna on a mast or pipe mounted on the house chimney and projecting some 10 feet above the top of the roof.

15. In 1959, some of plaintiffs complained to the officials of Danherst Corporation that defendants were violating the restriction against radio and television aerials, and, as a result thereof, an attorney for Danherst Corporation by letter dated August 27, 1959, duly received by defendants, gave notice to them that exterior antennas violated the building restrictions and requested them to remove the same from their premises.

16. Defendants failed and refused to remove said antennas, and the within action was commenced against them on September 29, 1961. Danherst Corporation is not a party to the within proceedings.

17. At the time of the hearing before the chancellor, defendants had erected, and for some time had main-

tained, three separate exterior antennas on their premises:

(a) the conical television antenna attached to the chimney of the house, as hereinabove mentioned;

(b) a "whip" or single-element vertical antenna for amateur radio operation, attached to the rear of the house and extending about five feet above the top of the roof; and

(c) a rotatable "Tri-bander", or three-element beam amateur radio antenna, atop a steel tower located in the rear yard near the rear of the house. The tower consisted of a 39 feet high single built-up column, appearing from the photographs to be somewhat more than one foot in cross section at the base and tapering to a cross section of only a few inches at the top. The same was supported and stabilized by guy wires attached to the house and to the ground. Projecting vertically from the top of the tower was a five-feet high mast. Attached to the mast, about two feet above the top of the tower, was a horizontal boom or pipe some 12 feet long from which three equally spaced tubular elements or cross members, each about 14 feet long and less than one inch in diameter, projected horizontally at right angles thereto.

18. At the time of the hearing before the chancellor, at least 41 antennas, either for television or of the "whip" type for "citizen-band" radio operation, were located atop, or projecting above, the roofs of other dwelling houses within the Fairless Hills development; at least five of these were located on homes within the Fairless Hills plan, unit B, sec. II, on which plaintiffs' and defendants' respective premises were located.

19. Approximately the same number of exterior antennas had existed on various dwelling houses in Fairless Hills as of the time of commencement of the within proceedings.

20. Neither plaintiffs nor anyone else have made complaint or commenced actions against any persons other than defendants for erecting or maintaining exterior radio or television antennas.

21. Electricity and telephone services are provided for the various homes in the Fairless Hills development by overhead wires supported by conventional wooden utility poles, 40 to 65 feet in height.

22. The Federal Communications Commission has allocated 82 channels to television broadcasting stations. Twelve of these, channels 2 through 13, are known as VHF channels; the other 70, channels 14 through 83, are the so-called UHF channels and have more recently been allocated by the commission to cover a much larger frequency range and are located within a distinct and removed part of the radio frequency spectrum.

23. Conventional television receiving apparatus commercially manufactured in past years has been capable of receiving only VHF channels; in locations such as Fairless Hills, indoor antennas, if not deteriorated by oxidation and age, are generally satisfactory in receiving such channels from Philadelphia television transmitters, since VHF signals, at least at the Fairless Hills location, are capable of passing through solid structures of the house walls and roof without serious impairment or distortion.

24. Such earlier manufactured television receivers are not capable of receiving UHF channels without modification, and even receivers of later vintage which are designed for UHF reception cannot practically be operated in Fairless Hills locations without specially designed exterior antennas erected at an elevation above rooftop; UHF television signals, by reason of the much higher radio frequencies involved, cannot be received by antennas within the walls and roof of a house at Fairless Hills.

25. For the purpose of stimulating the use of the additional 70 UHF channels in order to meet the increasingly heavy demands of competition and public service which cannot be accommodated by the 12 VHF channels, and pursuant to Act of Congress in 1962, the Federal Communications Commission has adopted a regulation requiring all new television receiving apparatus which may be the subject of sale through interstate commerce to be so designed as to be capable of receiving all 83 channels, both VHF and UHF.

26. It is the consensus of informed expert opinion in the electronics and television field that, in the not far distant future, the UHF channels will necessarily be more readily availed of in commercial and public service television transmissions as new television receivers conforming to the aforesaid regulation replace older models in the consumer's home. Accordingly, by reason of the technical necessity for outside antennas to achieve satisfactory reception of the anticipated more popular UHF frequencies, at least in locations such as Fairless Hills, interior antennas will be rendered technologically obsolete.

27. Plaintiffs, apart from their objections on aesthetic grounds, have not demonstrated any substantial benefit to themselves from the restriction in question which demands judicial protection in these proceedings, nor have they shown any special damage or other material detriment as a result of the several antennas located and maintained upon defendants' premises or the premises of others in Fairless Hills having similar outside radio or television antennas.

### Discussion

The chancellor is not impressed with defendants' contention that plaintiffs are not proper parties to the action, or that the same should have been instituted by Danherst Corporation. Plaintiffs are within the class of contemplated beneficiaries of the declaration

of covenants, etc., executed by Danherst Corporation on July 7, 1952. See subparagraph (K) thereof, quoted in the findings of fact, supra. As such, they have legal status, if otherwise entitled, to proceed for enforcement thereof: Mariner v. Rohanna, 371 Pa. 615; and see J. C. Grille, Inc., Liquor License Case, 181 Pa. Superior Ct. 456, 465-66.

Nor are defendants entitled under the pleadings filed to assert the defense of laches based on alleged prejudicial delay in the institution of the within proceedings against them. This question was not raised until the briefs were filed after the close of the hearings before the chancellor; the objection of laches is waived if not pleaded: Pennsylvania Rule of Civil Procedure 1509 (b).

On the merits of the case, the crucial issue is whether or not the relief sought in these proceedings should be granted in enforcement of the relevant clause of the restrictive covenants under all the surrounding circumstances. Little doubt would exist but that defendants' amateur radio and television antennas literally violate the prohibition against "radio and television aerials", and defendants do not contend otherwise. Such determination is not alone and of itself dispositive of the case, however, as plaintiffs seem to believe; the question still remains as to whether they are entitled to the drastic and extraordinary relief of injunctive process by reason thereof. The chancellor has neither found nor been referred to any exact precedent pertaining to the subject matter here involved, but believes that recognized general principles point the way to the proper result.

It must constantly be borne in mind that the within proceedings constitute an action in equity; as such, they must necessarily be governed by equitable principles and subjected to the usual cautionary hesitancy to invoke the strong arm of injunctive relief unless

the same be unquestionably essential to preserve matters of right and are demanded by the exigencies of the situation as disclosed by the record. Moreover, it must further be kept in mind that plaintiffs seek relief herein solely on the ground that defendants are violating the literal terms of the one clause of the restrictions. No pretense is offered and no contention is made that defendants' maintainance of these antennas in fact amounts to a nuisance or violates any of the other applicable restrictions; it is not contended, for example, that the devices are not properly constructed or constitute a threat to the neighborhood safety, or that the amateur radio operations of defendants in the use thereof amount to the carrying on of a business or commercial activity, or that the antennas themselves are other than incidental appurtenances to the residential nature of the defendants' occupancy of their premises as a place of abode.

After studied deliberation of the record and considered regard for the respective arguments based thereon, the chancellor has concluded that this is not a proper case for the court's peremptory interference with defendants' use of their property for the purposes in question. A strict and exacting interpretation of the relevant clause of the restrictions would lead to results which are so arbitrary and unreasonable as to indicate serious disbelief that such full ramifications thereof were intended; on the other hand, the language thereof is so uncertain and lacking in any reasonably defined standards for determining any exceptions from the literal impact thereof as to be incapable of practical application. Moreover, if the subject antennas, not inherently unlawful or harmful in themselves, be considered to be within the ambit of the restrictions, it appears from the evidence that they do serve substantial social, public and other utilitarian purposes, the benefits of which to defendants and others

far outweigh any slight and technical advantage to plaintiffs which might arise from the elimination thereof. Furthermore, plaintiffs have passively stood by without complaint or action against a not insignificant number of other existing and legally indistinguishable violations by third parties, so that the purely aesthetic objectives which constitute the only conceivable purposes to be achieved by the restrictions have already been substantially impaired. Finally, to a large degree the prohibition against television aerials, at least, has become outmoded and impractical, and, if literally enforced, in the near future will actually create effective hardship not only upon defendants but also upon residents of the whole Fairless Hills community in their full enjoyment of the modern phenomenon of television.

As summarized by Chief Justice Stern in Jones v. Park Lane for Convalescents, Inc., 384 Pa. 268, 272, the precedents establish ". . . that restrictions on the use of land are not favored by the law because they are an interference with an owner's full and free enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

The relevant clause of the restrictions here in question would prohibit *any* flagpole or *any* radio or television "aerial". This interdiction is indeed a harsh and arbitrary one, and the real extent or scope of the purpose or occasion intended to be served thereby is somewhat difficult to evaluate. Taken literally, the display of the national colors would be precluded if

any type or size of flagstaff were availed of; the use of any style or design of antenna for the reception or transmission of radio or television signals would be banned, no matter what its location or how inconspicuous the same might be. It is certainly not to be presumed that these patently arbitrary and unreasonable results were, in fact, contemplated by the framers of the clause in question. Compare the rationale of the decision in Congregational Conference Appeal, 352 Pa. 470, where an obviously unreasonable and impractical result required by the letter of the restrictive covenant was held not to have been within the intention thereof. Indeed, it is apparent that Danherst Corporation itself did not mean its language to be given such an unrealistic interpretation. Contemporaneously with its declaration of these restrictions, it was building houses which contained attic television antennas as part of the standard equipment thereof, devices which literally would meet the definition of the word "aerial" by Webster's New International Dictionary, second edition, as the "elevated conductor portion of a condenser antenna." While enclosed within the house structure, they nevertheless were "elevated . . . antennas".

If the restrictive language was not intended to be applied so exactingly, as would seem apparent in the premises, just what, in fact, was intended thereby? The only reasonably conceivable goal to be achieved by this limitation, so far as the chancellor can imagine, would be the prevention of what might be considered unsightly projections into the skyline above the housing development. But by what standards should this aesthetic concept be judged? The restrictive language does not preclude *all* elevated structures or devices. Wooden utility poles, for example, were not only contemplated in the design of the Fairless Hills project, but actually do exist and extend to a height and give

an appearance far more objectionable to the senses than the antennas which form the subject of complaint herein. In fact, moreover, the strict construction required by law of the clause in question would not literally prohibit the 39-feet high steel tower, which is probably the chief object of plaintiffs' complaint herein; the precise ban thereof would extend only to the horizontal elements at the top of the tower, since they are the only parts thereof which constitute an "aerial" in the functional electronic sense. In short, if only those electromagnetic radiating or receiving devices which are deemed to be unseemly were intended to be prohibited, without regard to the structures or supports upon which they be mounted, as the chancellor believes to be the strict but reasonable interpretation of the restrictions, the latter must necessarily be unenforceable for lack of any ascertainable delineation or definition by which problems of application of that aesthetic criterion might be resolved.

Even, however, if these uncertainties of definition be ignored and the restriction be ascertained to apply to defendants' antennas under standards which the chancellor does not apprehend, the equities of the situation still do not favor the grant of the extreme relief requested by plaintiffs under the circumstances disclosed by the record. Contrary to the latter's position, the use of the amateur radio antennas is not a mere matter of pointless and idle pastime or amusement to defendants; their radio equipment represents a substantial investment in money, time and technical knowledge and skill on their part, and, even though only an avocation to them, does serve valuable and important utilitarian purposes in the respects noted in the findings of fact, supra. Compare the observations of Justice (now Chief Justice) Bell as to the importance of amateur radio in present-day society, as set forth in Lord Appeal, 368 Pa. 121, 127, a zoning case

involving an antenna tower quite similar to the one here in question. Defendants' humanitarian and public service activities through the use of their radio equipment would be impossible without the exterior antennas in question or others of a different design but similar nature and function. The only possible benefit to plaintiffs which would result from a rigid enforcement of the ban against such antennas would be the gesture toward the maintenance of a nebulous aesthetic tone of the neighborhood which, in fact, has already been substantially, and adversely if these antennas themselves would detract therefrom, affected, not only by the existing utility poles but also by the uncomplained of antennas maintained by others in the vicinity.

Equity will not grant injunctive relief if the enforcement of a restriction on the use of land would result in a far greater hardship to the servient than a benefit to the dominant tenement: Katzman v. Anderson, 359 Pa. 280, 285, and cases cited. In LaRue v. Weiser, 378 Pa. 438, injunctive enforcement of a restrictive set-back covenant was refused, where the purpose of the restriction was ascertained to be founded solely on aesthetic considerations, and the benefits to the complaining parties from a strict enforcement would be slight in comparison to the advantage which would generally inure from the refusal thereof. See also Plymouth Woods Corporation v. Maxwell, 407 Pa. 539, where the court refused, on similar reasoning, to enjoin the violation by a lot owner of a restrictive covenant against the erection of a "For Sale" sign without the consent of the plaintiff-developer of the subdivision.

Plaintiffs' acquiescence in the substantial number of existing rooftop television and citizen-band radio antennas on the homes of others in Fairless Hills, without objection or action on their part, further militates against their right to equitable relief in this proceed-

ing against defendants alone. As stated in section 561 of the Restatement of Property:

"Acquiescence by one person in a violation by another of an obligation arising out of a promise respecting the use of land disables the one so acquiescing from enforcing by injunction an obligation of like effect against a third person when the acquiescence has the effect of preventing the realization of the benefit sought to be gained by the performance of the obligation attempted to be enforced."

In this connection, the chancellor has given no significance to defendants' evidence of a few scattered instances of shrubbery planted and maintained by others in possible violation of subsection D of the declaration of covenants, inasmuch as the same does not appear to be relevant to the instant problem arising under the entirely different provision of the restrictions relating to flagpoles and aerials. Compare Benner v. Tacony Athletic Association, 328 Pa. 577, 581.

The chancellor has, however, accepted defendants' uncontradicted testimony which, after eliminating certain duplications and instances not subject to the pertinent restrictions, disclosed the existence of 41 Fairless Hills homes with rooftop citizen-band radio and television antennas, as of a few days prior to the hearing, and their further testimony that at least that same number had obtained prior to the time that the within proceedings were commenced against them. Defendants' application of such other unprosecuted instances was not founded on mere generalities; the listing was specific, precise and, in many cases, supported by corroborative photographs. Plaintiffs in no way sought to impeach the same. Their only reply thereto was to suggest the comparatively small fraction of such violations in relation to the total number of homes in the Fairless Hills development. The fact remains, however, that they have not seen fit to raise any question

as to such outdoor antennas except insofar as they have brought the within proceedings against defendants; at least five of the other examples of violations were located in their own immediate neighborhood. If defendants' antennas would adversely affect the "tone" of the community, surely these others had equally done so. The chancellor does not agree that the relatively small number of such other infractions is of no significance or is so petty and inconsequential as not to be considered a factor in weighing plaintiffs' demands for drastic relief in these proceedings. It is an element to be taken into account in considering the effect of prior relaxation of the purposes sought to be advanced by the restrictions in question, and certainly detracts from the urgency of the need for the injunctive remedy sought herein to preserve the character and atmosphere of the surrounding area.

The final factor in the chancellor's considerations, while certainly not controlling, but, by the same token, not to be ignored, is the evidence which leads to the conclusion that the restriction is outmoded and impractical and will eventually become actually oppressive in this day of television as a household necessity, insofar as the prohibitory clause pertains to television antennas, which from an aesthetic as well as usefully functional point of view are on an equal plane with the radio antennas.

It is clear from the record that, at least in locations such as Fairless Hills, technological changes in public television broadcasts will, in the foreseeable future, render obsolete the practicality of indoor antennas for home reception. While they may be reasonably satisfactory for local VHF channels, they are not adequate for reception of more distant stations, and they are technically incapable of intercepting transmissions on the UHF channels. Predictions of the increasingly more prevalent use of the latter for general television broadcasting purposes by the electronics expert who

testified for defendants in the within proceedings are corroborated by legislative and administrative action at the Federal level. By Act of Congress of July 10, 1962, P. L. 87-529, 76 Stat. 150, 47 U.S.C.A. §§303, 330, the Federal Communications Commission was given authority to require that all television receiving apparatus which would thereafter be the subject of sale through interstate commerce be capable of adequately receiving all frequencies allotted by the commission to television broadcasting. The committee reports make clear that this legislation was enacted to encourage and stimulate the more generally available utilization of the UHF frequencies, in addition to the VHF channels already in common use, a result necessitated by the increasingly large demand for additional television broadcasting facilities and the inadequacies of the VHF channels to accommodate any substantial increase in the number of the same. See 1962 U. S. Code Congressional and Administrative News, p. 1873. Accordingly, with the inexorable march of progress and change, residents of Fairless Hills, if unable to avail of outdoor television antennas, in the near future will be deprived of the right to receive what inevitably will become the equally if not more common television channels. Such a result is certainly not to be desired and will not be compelled unless absolutely necessitated by other strongly impelling considerations, which are not made to appear in this case. Outmoded restrictions must give way to modern uses of property; changes in conditions, whether arising out of acquiescence of neighboring property owners or by the evolution of time, may prevent the rigid enforcement of building and use restrictions in courts of equity: Henry v. Eves, 306 Pa. 250, 259. Equity will not prohibit or retard improvements simply to enforce the literal observance of a condition or covenant: Daniels v. Notor, 389 Pa. 510, 518.

## CONCLUSIONS OF LAW

1. The premises of defendants are subject to the restrictive covenants, inter alia, as set forth in finding of fact no. 4, supra.

2. Plaintiffs, procedurally, are proper and interested parties to bring this action for enforcement of said restrictive covenants.

3. Plaintiffs are not barred herein by laches.

4. The clause of said restrictive covenants prohibiting radio and television aerials may not, under the circumstances of this case, reasonably be construed as intended to preclude all radio and television aerials of whatsoever nature, kind or location, or howsoever supported, but must have been intended to be subject to some qualifications.

5. The qualifications, limitations or exceptions of those radio and television aerials not intended to be prohibited are not delineated or determinable by any objective standard.

6. The only purpose, objective or benefit intended by said restrictive covenant against radio or television aerials was founded on aesthetic considerations, incapable of adequate judicial interpretation.

7. Said restrictive covenant against radio and television aerials is judicially unenforceable under the circumstances of this case.

8. The subject radio and television antennas on premises of defendant serve substantial and utilitarian purposes, the benefit of which to defendants and to others significantly outweighs any slight and inconsequential detriment to plaintiffs in the failure to compel their removal, as well as any nebulous and unsubstantial advantage which might accrue to plaintiffs if their removal were compelled.

9. Plaintiffs have acquiesced without protest or action against legally indistinguishable violations by others in the community of the restrictive covenant

against radio and television aerials, so that the aesthetic objectives of the restriction have already been otherwise substantially impaired in the same sense that defendants' violations would do so.

10. Said restrictive covenant against television aerials in the near future will become outmoded and obsolete, and will result in actual hardship upon the community generally, if enforced.

11. Plaintiffs are not entitled to the extraordinary remedy of injunctive relief under the circumstances of this case.

12. Plaintiffs' complaint should be dismissed and judgment entered for defendants.

13. Plaintiffs should pay the costs of the within proceedings.

### DECREE NISI

And now, April 24, 1964, for the reasons stated in the foregoing adjudication, plaintiffs' complaint is hereby dismissed and judgment is hereby entered for defendants, costs to be paid by plaintiff.

This decree shall be entered as a dcree nisi and shall become the final decree of the court, unless exceptions be filed hereto within 20 days from this date.